199 F.3d 496 (D.C. Cir. 1999)
 Brett C. Kimberlin, Appellee
v.
J. Michael Quinlan, Director U.S. Bureau of Prisons and Loye W. Miller, Jr.,Appellants
 No. 98-5530
 United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT
 Argued November 10, 1999
Decided December 28, 1999
 
 Appeal from the United States District Court for the District of Columbia(No. 90cv01549)
 Michael L. Martinez argued the cause for appellants. With him on the briefs were Paul G. Lane and Danielle E. Berry.
 Timothy E. Boyle argued the cause for appellee. With him on the brief were Howard T. Rosenblatt and Matthew S. Wild.
 Before: Edwards, Chief Judge, Silberman and Henderson, Circuit Judges.
 Opinion for the Court filed by Chief Judge Edwards.
 Separate opinion dissenting in part filed by Circuit Judge Henderson.
 Edwards, Chief Judge:
 
 
 1
 In 1990, Brett Kimberlin brought this Bivens action alleging, inter alia, that J. Michael Quinlan, formerly the Director of the Federal Bureau of Prisons, and Loye Miller, formerly the Director of Public Affairs for the United States Department of Justice, violated his constitutional rights under the First Amendment. This is the second time that this court has had occasion to hear an appeal in this case. The first appeal followed an order by the District Court denying defendants' motion for summary judgment on grounds of qualified immunity. See Kimberlin v. Quinlan, 774 F. Supp. 1 (D.D.C. 1991) ("Kimberlin I"). We reversed the District Court, see Kimberlin v. Quinlan, 6 F.3d 789 (D.C. Cir. 1993), but the Supreme Court granted certiorari, vacated this court's decision in light of Johnson v. Jones, 515 U.S. 304 (1995), and remanded the case for further proceedings. See Kimberlin v. Quinlan, 515 U.S. 321 (1995).We then remanded the case to the District Court. The trial court then considered and denied defendants' renewed motion for summary judgment on grounds of qualified immunity. In reaching this conclusion, the District Court held that its judgment in the initial proceeding established the law-of-thecase regarding the existence of clearly established law and that this was dispositive of the qualified immunity issue. See Kimberlin v. Quinlan, Civ. Act. No. 90-1549, Mem. Op. (D.D.C. Oct. 21, 1998), reprinted in Joint Appendix ("J.A.") 24-44 ("Kimberlin II").
 
 
 2
 We affirm the judgment of the District Court on the law-ofthe-case issue. In their appeal of Kimberlin I, appellants did not challenge the District Court's judgment regarding the clearly established law; thus, the issue was settled as to these parties in this case. And there was no good reason for the District Court to reexamine its judgment when the case was remanded for further proceedings.
 
 
 3
 The judgment on the clearly established law, however, is not fully dispositive of the issues raised by appellants' renewed motion for summary judgment on grounds of qualified immunity. The District Court must now determine whether there are disputed issues of fact as to whether appellants violated the clearly established law either by intentionally segregating Mr. Kimberlin from the general prison population or by interfering with his press contacts on account of the content of his speech. In particular, the District Court must inquire whether Mr. Kimberlin has identified affirmative evidence from which a jury could find that he has carried his burden of proving the pertinent motive.
 
 
 4
 Accordingly, the judgment of the District Court on the lawof-the-case issue is affirmed. However, the case is remanded for further proceedings to address the remaining issues on the qualified immunity claim and, if necessary, to proceed to hear the case on the merits in the event that appellants' motion is denied.
 
 I. BACKGROUND
 A. Factual Background
 
 5
 In 1988, Brett Kimberlin was an inmate at the Federal Correctional Institute at El Reno, Oklahoma. Nina Totenberg, a reporter with National Public Radio, contacted Mr. Kimberlin approximately one month before the November 1988 election, acting on a tip that Mr. Kimberlin claimed to have sold marijuana to then-vice-presidential candidate Dan Quayle while Mr. Quayle was in law school. The story leaked to other news organizations, and, in short time, the prison was inundated with requests to interview Mr. Kimberlin.
 
 
 6
 Mr. Kimberlin claims that on three occasions he was placed in administrative segregation because of his communication with the press and that on each occasion appellants interfered with his access to the press because of the content of his speech. The first detention occurred on November 4, 1988, after Mr. Kimberlin conducted an interview with NBC News that NBC never aired. After the NBC interview, several news organizations contacted the prison the same day and requested interviews with Mr. Kimberlin. Prison officials arranged a group interview for that evening at 7:00 p.m. The event never occurred, because Mr. Quinlan personally canceled the interview. The District Court has previously observed that there was "some question even from the defense side as to why he did that." Kimberlin I, 774 F. Supp. at 7.Subsequently, around 11:00 p.m., Mr. Kimberlin was placed in administrative detention. The parties dispute the reasons both for the interview's cancellation and for Mr. Kimberlin's detention; we pass no judgment regarding whether there is sufficient evidence to establish a dispute as to the defendants' role in and motivation for the cancellation of the interview and the placement of Mr. Kimberlin in detention. Mr. Kimberlin was released from administrative detention on Saturday, November 5, and he began to organize a telephone call to a group of reporters in Washington, D.C., to take place at 10:00 a.m. on November 7, the day before the election.
 
 
 7
 Mr. Kimberlin was never permitted to make his phone call, because on Monday, November 7, he was placed in administrative segregation for a week. The parties again dispute the reason for this decision. Mr. Kimberlin was confined to administrative detention a third time on December 22, 1998.Mr. Kimberlin alleges that the defendants were responsible for both his confinement and the interference with his press contacts, all on account of the content of his speech.
 
 B. Procedural Background
 
 8
 On July 2, 1990, Mr. Kimberlin filed his original complaint against Mr. Quinlan and Mr. Miller in their individual capacities, the Federal Bureau of Prisons, and the United States Government. In the instant case, all that is before the court is Mr. Kimberlin's claim that Mr. Quinlan and Mr. Miller violated Mr. Kimberlin's First Amendment rights.
 
 
 9
 Appellants first moved to dismiss or for summary judgment on September 27, 1990, arguing, inter alia, that: (1) Mr. Kimberlin failed to meet the D.C. Circuit's "heightened pleading" standard which was then being applied to assess motive based civil rights claims against government officials; (2) there was no violation of clearly established law, and, thus, appellants were entitled to qualified immunity; and (3) even if the law were clear, appellants' conduct was objectively reasonable. The District Court denied appellants' asserted qualified immunity on the First Amendment claim, finding both that Mr. Kimberlin's pleading was sufficient under the heightened pleading standard and that there was a clearly established First Amendment right for prison inmates to "be free from governmental interference with their contacts with the press if that interference is based on the content of their speech or proposed speech." Kimberlin I, 774 F. Supp. at 34.
 
 
 10
 Appellants appealed only the trial court's decision regarding the heightened pleading standard. This court reversed, see Kimberlin, 6 F.3d at 797-98, but the Supreme Court vacated our decision in light of Johnson, 515 U.S. at 304, and remanded the case for further proceedings. See Kimberlin, 515 U.S. at 322. This court then remanded the case to the District Court.
 
 
 11
 Discovery proceeded in the District Court, and, after completion of discovery, appellants moved to dismiss or for summary judgment on the same grounds rejected by the District Court in Kimberlin I. Pending the matter's disposition, however, the Supreme Court rejected this court's heightened pleading standard for civil rights suits against government officials. See Crawford-El v. Britton, 523 U.S. 574 (1998). Thus, appellants' only remaining arguments were that the law regarding prisoners' First Amendment rights was not clearly established and that, even if it were, appellants' conduct was objectively reasonable.
 
 
 12
 On October 21, 1998, the District Court issued the decision that is the subject of the current appeal. The District Court denied appellants' claim of qualified immunity, holding that the "law-of-the-case," unchallenged on the first appeal, was that a prisoner's right not to have his contact with the press interfered with on the basis of the content of his communication was clearly established at the time of the alleged violations. See Kimberlin II at 6, reprinted in J.A. 29. This appeal followed.
 
 II. ANALYSIS
 A. The Law-of-the-Case Doctrine
 
 13
 The law-of-the-case doctrine rests on a simple premise:"the same issue presented a second time in the same case in the same court should lead to the same result." LaShawn A. v. Barry, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc).Accordingly, a "legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time."Williamsburg Wax Museum, Inc. v. Historic Figures, Inc., 810 F.2d 243, 250 (D.C. Cir. 1987). The law-of-the-case may be revisited only if there is an intervening change in the law or if the previous decision was "clearly erroneous and would work a manifest injustice." LaShawn A., 87 F.3d at 1393 (internal quotation marks omitted).
 
 
 14
 Our dissenting colleague misconstrues the posture of this appeal by suggesting that the law-of-the-case doctrine is inapplicable to the instant case. In this case, we are called upon to review the propriety of the District Court's application of the law-of-the-case. Thus, there is no occasion to invoke the so-called "derivative waiver" doctrine. Crocker v. Piedmont Aviation, Inc., 49 F.3d 735 (D.C. Cir. 1995), suggests nothing to the contrary. The derivative waiver principle described in Crocker applies where a party fails to appeal an appealable issue and then raises the issue for the first time in a subsequent appeal. See id. at 739-40. In that circumstance, neither the District Court nor the appellate court has the opportunity to apply the law-of-the-case. Here, appellants failed to appeal an appealable issue and then raised the issue for a second time before the District Court. Therefore, we must determine whether the District Court correctly applied its established law-of-the-case. Prior opinions of this court make it clear that, in a situation such as the one raised in the case at bar, notions of derivative waiver do not come into play. See, e.g., Palmer v. Kelly, 17 F.3d 1490, 1494 (D.C. Cir. 1994) (reviewing the District Court's decision to apply law-of-the-case for error); Williamsburg Wax Museum, 810 F.2d at 250-51 (same).
 
 
 15
 We also not that, even were the dissent correct in suggesting that the "derivative waiver" doctrine applies here, "discretion to waive a waiver is normally exercised only in exceptional circumstances, where injustice might otherwise result."Crocker, 49 F.3d at 740 (internal quotation marks omitted).There are no "exceptional circumstances" justifying any waiver here.
 
 
 16
 Application of the law-of-the-case doctrine is a two-step process: A court must first determine whether the threshold requirements are met and then ask whether there are prudential reasons to ignore the applicable law-of-the-case. The threshold requirements for application of the law-of-the-case doctrine are plainly met in the instant case. In Kimberlin I, the District Court ruled adversely to appellants on the clearly established law issue. Appellants did not challenge the clearly established law in their Kimberlin I appeal, although they concede that this issue was appealable. In an effort to avoid the obvious, appellants make two arguments against application of the law-of-the-case doctrine: first, they claim that there has been an intervening change in the law that justifies prudential departure from the law-of-the-case; and, second, they contend that the doctrine should not apply to qualified immunity appeals. These arguments are meritless.
 
 
 17
 Appellants argue that intervening law has "evolved" since Kimberlin I. See Reply Br. at 9. On this point, appellants cite the Supreme Court's decision in Sandin v. Conner, 515 U.S. 472 (1995), which narrowed the availability to prisoners of due process challenges to disciplinary segregation. This argument does not hold water. First, without regard to Sandin's specific holding, the District Court in Kimberlin I was required to decide what law was clearly established in 1988. Sandin, announced in 1995, is not relevant to what law was clearly established seven years earlier.
 
 
 18
 Furthermore, Sandin does not mark a change in the law relevant to this case. Sandin only establishes that a prisoner's segregation from the rest of the prison population will trigger the procedural requirements of the Due Process Clause when the segregation falls outside the "range of confinement to be normally expected." 515 U.S. at 487.Sandin did not change the law regarding whether a prison official violates a prisoner's rights under the First Amendment by segregating the prisoner because of the content of a prisoner's communications with the media. Indeed, the Court in Sandin made it clear that:
 
 
 19
 [p]risoners ... retain other protection from arbitrary state action even within the expected conditions of confinement. They may invoke the First and Eighth Amendments and the Equal Protection Clause of the Fourteenth Amendment where appropriate, and may draw upon internal prison grievance procedures and state judicial review where available.
 
 
 20
 Id. at 487 n.11 (emphasis added). Here, then, even if Mr. Kimberlin's administrative segregation fell within the expected range of his sentence, Sand in recognizes that Mr. Kimberlin's administrative segregation still may allege that such segregation violated the First Amendment. Thus, there was no change in the applicable law that might have led the District Court to revisit Kimberlin I.
 
 
 21
 Nor is there any weight to appellants' assertion that the law-of-the-case doctrine is inapplicable to qualified immunity appeals. Appellants rely heavily on Behrens v. Pelletier, in which the Supreme Court acknowledged that qualified immunity issues may require more than one "judiciously timed appeal." 516 U.S. 299, 309 (1996) (internal quotation marks omitted). This is so, the Court explained, because "the legally relevant factors ... will be different on summary judgment than on an earlier motion to dismiss. At that earlier stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.' " Id. On this analysis, the defendant in Behrens did not waive any arguments in his first appeal, so the situation in that case did not call into play the law-of-the-case doctrine. And Behrens certainly does not say that the traditional law of-the-case doctrine is inapplicable to cases involving claims of qualified immunity.
 
 
 22
 Furthermore, appellants cite nothing to indicate that the relevant facts have somehow changed so that the District Court's opinion in Kimberlin I regarding the clearly established law is now somehow diminished. Appellants address disputed facts only in connection with their claim that their conduct was objectively reasonable. See Br. for Appellants at 22-27; 28-36. However, in advancing this argument, they tellingly acknowledge that the issue of what was clearly established law at the time of the alleged violation is a legal determination that does not depend on the evidence in dispute. In short, appellants' attempt to draw sustenance from Behrens is fruitless.
 
 
 23
 Finally, it is noteworthy that appellants incorrectly frame the relevant "law" for which the court must determine what was clearly established when. Appellants ask whether Mr. Kimberlin had either an "unfettered clearly established right of access to the press" or "a clearly established right not to be placed in administrative detention." Br. for Appellants at 2. These are the wrong questions. The proper question in this case, as the District Court correctly noted, is whether Mr. Kimberlin had a clearly established right "to be free from governmental interference with [his] contacts with the press if that interference is based on the content of [his] speech or proposed speech." Kimberlin I, 774 F. Supp. at 3-4. This right without doubt was clearly established in 1988. See Turner v. Safley, 482 U.S. 78, 90 (1987) ("We have found it important to inquire whether prison regulations restricting inmates' First Amendment rights operated in a neutral fashion, without regard to the content of the expression."); Pell v. Procunier, 417 U.S. 817, 828 (1974) (holding that so long as restriction on inmates' communication "operates in a neutral fashion, without regard to the content of the expression," it will not violate First Amendment).
 
 B. Disputed Issues of Fact
 
 24
 The District Court rested the decision under review on the law-of-the-case. Finding that appellants had waived any challenge to the judgement in Kimberlin I on the established law, the trial court reasoned that summary judgment on grounds of qualified immunity was inappropriate. This approach fell short of what is required by Crawford-El, 523 U.S. at 600. In particular, the District Court failed to consider whether there are disputed issues of fact as to whether appellants violated clearly established law by intentionally segregating Mr. Kimberlin or interfering with his press contacts on account of the content of his speech.
 
 
 25
 At oral argument, counsel for appellee urged that one line in the District Court's order suggests that the court did indeed weigh the evidence regarding the defendants' intent. See Kimberlin II at 4, reprinted in J.A. 27. We are unimpressed, for counsel's argument clearly is a stretch and it does not reach the desired mark. The reference cited by counsel is to the decision in Kimberlin I, in which the trial court admittedly conducted an analysis of the record then before it. See 774 F. Supp. at 6-8. However, discovery has continued since Kimberlin I, and there is nothing in Kimberlin II that addresses the current record.
 
 
 26
 We therefore remand this matter to the District Court for consideration of whether there are disputed issues of material fact regarding the defendants' motivation. In so doing, the District Court must ask whether Mr. Kimberlin has identified "affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." Crawford-El, 523 U.S. at 600.
 
 
 27
 The District Court will have two principal considerations at the forefront upon remand. First, the District Court is not foreclosed from issuing a summary judgment for appellants merely because Mr. Kimberlin's claim rests on appellants' motive. It is true that "objective" issues such as whether the plaintiff suffered an injury or engaged in protected conduct are "more amenable to summary disposition than disputes about the official's intent." Id. at 599. Nonetheless, the Supreme Court has expressed faith in the experience of District Court judges to manage cases involving allegations of improper intent in a way that will allow for summary judgment in appropriate cases. Indeed, this expressed faith laid the foundation for the Court's rejection of the so-called "heightened pleading" standard in civil rights actions against government officials. See id. at 600-01.
 
 
 28
 Second, even if appellants provide an objectively valid reason for their actions in this case, the District Court must still inquire into whether there is a disputed issue of fact as to whether appellants were actually motivated by an illegitimate purpose. The opinion for the Court in Crawford-El specifically rejected the dissent's proposal to "immunize all officials whose conduct is 'objectively valid,' regardless of improper intent." Id. at 593-94. Moreover, in considering any objectively valid reasons offered by appellants, the District Court should be mindful of the Supreme Court's recent decision in Wilson v. Layne, 119 S. Ct. 1692 (1999). In Wilson, the Court described the "objectively reasonable" aspect of the qualified immunity defense as "whether a reasonable officer could have believed that bringing members of the media into a home during the execution of an arrest warrant was lawful, in light of clearly established law and the information the officers possessed." Id. at 1700. The analogous question in this case has already been answered: the District Court has found that no reasonable prison official could believe that interfering with an inmate's access to the press because of the content of the inmate's speech could be lawful. The District Court must now weigh the evidence to determine if there are disputed issues of fact as to whether appellants were motivated by improper intent.
 
 
 29
 Upon resolving these questions, the District Court will either issue a summary judgment for appellants or proceed to hear the case on the merits. The second possibility will result in an interlocutory order which will not be subject to immediate review. See Johnson, 515 U.S. at 313-18. Nonfinal qualified immunity determinations are appealable "when they resolve a dispute concerning an abstract issue of law relating to qualified immunity--typically, the issue whether the federal right allegedly infringed was clearly established."Behrens, 516 U.S. at 313 (internal quotation marks omitted) (citing Johnson, 515 U.S. at 317). When the law and fact issues are not separable, however, a very different situation arises:
 
 
 30
 Many constitutional tort cases, unlike the simple "we didn't do it" case before us, involve factual controversies about, for example, intent--controversies that, before trial, may seem nebulous. To resolve those controversies--to determine whether there is or is not a triable issue of fact about such a matter--may require reading avast pretrial record, with numerous conflicting affidavits, depositions, and other discovery materials.
 
 
 31
 Johnson, 515 U.S. at 316. The "upshot," according to the Court, "is that ... considerations of delay, comparative expertise of trial and appellate courts, and wise use of appellate resources argue in favor of limiting interlocutory appeals of 'qualified immunity' matters to cases presenting more abstract issues of law." Id. at 317. The District Court's original decision that Mr. Kimberlin's First Amendment rights were clearly established at the time of the alleged violation was immediately appealable, because the disputed issue involved an "abstract" issue of law. Whether there is a disputed issue of material fact regarding appellants' intent, however, is not "separable" from Mr. Kimberlin's underlying cause of action; in fact, it is part and parcel of his claim.
 
 
 32
 Moreover, this court has interpreted Behrens and Johnson to draw a clear distinction between the availability of appellate review in qualified immunity cases involving pure legal issues and those involving disputed issues of fact:
 
 
 33
 In the qualified immunity arena, the Supreme Court has drawn a distinction between two categories of cases, only one of which merits immediate appellate review: an interlocutory decision that rests upon the purely legal question of whether or not an official's actions violate clearly established law does satisfy the Cohen criteria, while an interlocutory decision that denies summary judgment because of the presence of triable issues of fact does not.
 
 
 34
 Meredith v. Federal Mine Safety & Health Review Comm'n, 177 F.3d 1042, 1048-49 (D.C. Cir. 1999) (citations omitted);see also Farmer v. Moritsugu, 163 F.3d 610, 613-14 (D.C. Cir. 1998) (distinguishing interlocutory appeals of qualified immunity raising abstract legal issues from appeals challenging the sufficiency of the evidence).
 
 
 35
 Thus, if the District Court, on remand, denies summary judgment on the issue of appellants' intent, the matter will not be subject to immediate appeal.
 
 III. CONCLUSION
 
 36
 For the reasons articulated herein, the case is remanded to the District Court for further proceedings consistent with this opinion.
 
 
 37
 Karen LeCraft Henderson, Circuit Judge, dissenting in part:
 
 
 38
 I dissent from the majority's holdings that (1) the law of the case doctrine bars review of the district court's determination that the applicable law was clearly established at the time of the alleged constitutional deprivation and (2) that the case must be remanded to determine whether the appellants' conduct violated clearly established law. In my view, law of the case does not apply, the applicable law was clearly established and the appellants' conduct, as revealed in the record, did not violate the clearly established law. Accordingly, I would hold that the appellants are entitled to qualified immunity and remand for entry of judgment in their favor.
 
 
 39
 First, I disagree with the majority's contention that the appellants' failure in their first appeal to challenge the district court's ruling that the relevant law was clearly established made that ruling the "law of the case" precluding the appellants from arguing otherwise now. As this court explained in Crocker v. Piedmont Aviation, Inc., 49 F.3d 735 (D.C. Cir. 1995), "law-of-the-case doctrine holds that decisions rendered on the first appeal should not be revisited on later trips to the appellate court." 49 F.3d at 739. In other words, law of the case applies where "the first appeals court has affirmatively decided the issue, be it explicitly or by necessary implication."Id. Because this court did not decide the clearly established law issue in the 1992 appeal, we here confront not law of the case but an "analytically distinct principle ...--best understood as a species of waiver doctrine" which "does not involve any previous appellate court decision on the barred issue" but imposes a "bar on raising issues omitted from prior appeals."Id. Under this waiver principle, " 'a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, [governs] future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.' " Id. (quoting Williamsburg Wax Museum, Inc. v. Historic Figures, Inc., 810 F.2d 243, 250 (D.C. Cir. 1987); citing Palmer v. Kelly, 17 F.3d 1490, 1495-96 (D.C. Cir. 1994);Laffey v. Northwest Airlines, Inc., 740 F.2d 1071, 1089-90 (D.C. Cir. 1984)).[1] I do not believe, however, that waiver bars appeal of the clearly established law determination here.
 
 
 40
 As the court in Crocker noted, "neither law-of-the-case doctrine proper nor th[e] subsidiary waiver principle is an absolute preclusion to appellate review." Id. Each of these principles is "prudential" and admits of exceptions "broader than for conventional issue or claim preclusion" but the preclusive effect of waiver is "one notch weaker" than that of law of the case. Id. In the case of waiver, "the appellate court, for example, always possesses discretion to reach an otherwise waived issue logically 'antecedent to and ultimately dispositive of the dispute before it.' " Id. at 740 (quoting "United States Nat'l Bank of Oregon v. Independent Ins. Agents of Am., 508 U.S. 439,447, 113 S.Ct. 2173 (1993)).
 
 
 41
 In Insurance Agents, the United States Supreme Court held this court had not abused its discretion in deciding an issue first raised in supplemental post-argument briefing, although the appellants had failed to raise it in either their opening or reply brief before argument. The Court so held because the neglected issue--whether a statute had been repealed--was "antecedent to" and "dispositive of" the question addressed in the opening brief--how the provision should be construed. While the circumstances here (two separate appeals) are somewhat different from those in Insurance Agents (a single appeal with post-argument supplemental briefing), the same reasoning applies. Whether the law was clearly established is "antecedent to" and, if decided in the appellants' favor, "dispositive of" the issue argued in the 1992 appeal: whether the appellants in fact violated the law. If the law was not clearly established then it is irrelevant whether or not the appellants violated the law because they were shielded by qualified immunity and therefore entitled to judgment as a matter of law. See Behrens v. Pelletier, 516 U.S. 299, 306 (1996) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.") (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Given the strong policy favoring an official's "entitlement not to stand trial or face the other burdens of litigation," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985), we should exercise our discretion here and decide whether the law was clearly established at the time of the alleged violation. I conclude that it was.
 
 
 42
 Case law from the Supreme Court, as well as from circuit courts including this one, make it clear that the right identified by the district court--federal inmates' "First Amendment right to be free from governmental interference with their contacts with the press if that interference is based on the content of their speech or proposed speech right of federal prisoners," 774 F. Supp. at 3-4--was well established at the time of the alleged violation in November 1988. See Crawford-El v. Britton, 93 F.3d 813, 826 (D.C. Cir. 1996) (en banc) ("[I]n light of Turner [v. Safley, 482 U.S. 78 (1987)] and related cases, retaliation against Crawford-El for criticism of the prison administration that was truthful, and not otherwise offensive to some penological interest (so far as appears), would have violated a clearly established right of which a reasonable prison official would have known.") (citing Pickering v. Board of Educ., 391 U.S. 563, 568, 571-72 (1968)), vacated on other ground, 523 U.S. 574 (1998); Murphy v. Missouri Dep't of Correction, 769 F.2d 502, 503 (8th Cir. 1985) ("While a prisoner enjoys no constitutional right to remain in a particular institution and generally is not entitled to due process protections prior to such a transfer, prison officials do not have the discretion to punish an inmate for exercising his first amendment rights by transferring him to a different institution.") (citing Garland v. Polley, 594 F.2d 1220, 1222-23 (8th Cir. 1979)) (internal citations omitted);Main Rd. v. Aytch, 522 F.2d 1080, 1086-87 (3d Cir. 1975) ("Even if the prisoners held pending trial have no constitutional right to meet with reporters, the First Amendment precludes Aytch from regulating, through the grant or denial of permission for prisoners to talk with reporters, the content of speech which reaches the news media, unless the restriction bears a substantial relationship to a significant governmental interest."). I therefore concur--albeit on a different ground--in the majority's affirmance of the district court's holding that the law was clearly established. I disagree, however, with the majority's decision to remand in order to determine whether the appellant's conduct violated the clearly established law.
 
 
 43
 Although the district court's order does not expressly address whether the evidence, viewed most favorably to Kimberlin, makes out a constitutional deprivation, the issue is nevertheless properly before this court. The appellants' summary judgment motion below expressly argued the issue, see Kimberlin v. Quinlan, No. 90-1549, Memorandum in Support of Summary Judgment Motion at 16-29 (filed Feb. 3, 1997), and the district court, in denying the summary judgment motion, at least implicitly resolved it in Kimberlin's favor. Thus, "there is no apparent impediment to [the argument] being raised on appeal." Behrens v. Pelletier, 516 U.S. 299, 313 (1996) (authorizing appeal where argument "was presented by the petitioner in the trial court" and "the District Court's denial of petitioner's summary judgment motion necessarily determined that certain conduct attributed to petitioner ... constituted a violation of clearly established law," notwithstanding that "the District Court, in denying petitioner's summary judgment motion, did not identify the particular charged conduct that it deemed adequately supported"). We should therefore address the question now,[2] without remand, and we should resolve it in the appellants' favor.
 
 
 44
 As the district court did not identify what the evidence reveals the appellants did, it is this court's "task" to undertake a " 'review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed.' " Behrens, 516 U.S. at 313 (quoting Johnson, 515 U.S. at 319). The uncontroverted facts establish that appellant Quinlan canceled the press conference because it was not authorized under Bureau of Prisons policy and ordered Kimberlin's first administrative segregation for the purpose of ensuring Kimberlin's safety. No evidence suggests that Quinlan undertook these acts with intent to prevent Kimberlin from reporting his story to the press, which Kimberlin had in fact already done in an interview with NBC News which Quinlan had himself facilitated. Nor is there evidence that Quinlan was at all involved in the two subsequent segregations on November 7 and December 22, 1988.As for appellant Miller, the record does not indicate that he made any effort in his telephone conversations with the Bureau of Prisons either to get the press conference canceled or to secure Kimberlin's confinement. Because the appellants' conduct as revealed by the record, viewed in the light most favorable to the plaintiff, did not violate Kimberlin's First Amendment rights (clearly established or otherwise), both are entitled to qualified immunity. See Siegert v. Gilley, 500 U.S. 226 (1991) (defendant entitled to qualified immunity where plaintiff "not only failed to allege the violation of a constitutional right that was clearly established at the time of the [defendant's] action, but ... failed to establish the violation of any constitutional right at all.").
 
 
 45
 For the foregoing reasons, I would remand with direction to enter summary judgment for the appellants.
 
 
 
 Notes:
 
 
 [1]
 In Palmer, this court applied the waiver theory (albeit under the "law of the case" rubric) in the same circumstances we have here--where the district court concluded its earlier unappealed decision was law of the case. See 17 F.3d at 1495-96 (defendant "waived" claim through "failure to appeal on alternative grounds" in earlier appeal).
 
 
 [2]
 Appeal of this issue is not barred under Johnson v. Jones, 515 U.S. 304, 319 (1995), which held that no appeal lies "if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred." Behrens, 516 U.S. at 313. Here, the issue is, as in Behrens, whether "the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the Harlow standard of 'objective legal reasonableness.' " Id.; see also Farmer v. Moritsugu, 163 F.3d 610, 614 (D.C. Cir. 1998) (permitting immediate appeal where case " 'concern[s], not which facts the parties might be able to prove, but, rather, whether or not certain given facts show[ ] a violation of "clearly established" law' ") (quoting Johnson, 515 U.S. at 311) (alterations original).