# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 17, 2023        Decided June 11, 2024

No. 22-7118

EIG ENERGY FUND XIV, L.P., ET AL.,
APPELLEES

v.

PETROLEO BRASILEIRO, S.A.,
APPELLANT

ODEBRECHT, S.A., ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-00333)

———

*Sean Marotta* argued the cause for appellant. With him on the briefs were *N. Thomas Connally*, *Christopher T. Pickens*, and *Patrick C. Valencia*.

*Daniel B. Goldman* argued the cause for appellees. With him on the brief were *Kerri Ann Law*, *Claudia Pak*, and *Matthew M. Madden*.

Before: HENDERSON, WILKINS and KATSAS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: EIG, an American investment fund, lost $221 million after it invested in a project to exploit newly discovered oil reserves off the coast of Brazil. The company behind the project was Petróleo Brasileiro, S.A. (Petrobras), Brazil's state-owned oil company. A criminal investigation eventually discovered that Petrobras executives were taking bribes from contractors and splitting the proceeds amongst themselves and Brazilian politicians. When the corruption came to light, the project's lenders pulled out. The project collapsed and EIG's investment became worthless.

The issue before us is whether EIG can continue its lawsuit against Petrobras or whether Petrobras is immune from liability under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1330, 1602-1611. We held earlier that EIG had sufficiently alleged that Petrobras' fraud "cause[d] a direct effect in the United States" and therefore fell within the direct-effect exception to the FSIA. Accordingly, we affirmed the denial of Petrobras' motion to dismiss. *See EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro, S.A.* (*EIG II*), 894 F.3d 339 (D.C. Cir. 2018). Now, after discovery, we reach the same conclusion on the summary judgment record. We therefore affirm the district court's denial of Petrobras' assertion of foreign sovereign immunity at this stage and remand for further proceedings.

## I. Background

Both parties accept the district court's findings of undisputed facts for this interlocutory appeal. We draw the following description from the district court order, repeating only the essentials of its thorough account.

In 2007, Petrobras, an oil and gas company owned by the Brazilian government, discovered vast oil reserves in the Pre-

Salt Reserves off the Brazilian coast. *EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A.* (*EIG III*), 621 F. Supp. 3d 30, 39–41 (D.D.C. 2022). It planned to exploit the reserves by building twenty-eight drilling rigs at a total cost of roughly $22 billion. *Id.* at 41–42. To do so, Petrobras contracted with Brazilian shipyards to build the rigs "through a financial structure sponsored by Petrobras" and open to outside investors. *Id.* at 42. It hired Banco Santander Brasil S.A. (Santander) as its financial advisor to secure financing. *Id.*

That "financial structure" took the form of Sete Brasil Participações (Sete), an entity Petrobras formed in December 2010 to raise money and contract with shipyards for the necessary construction. *Id.* Petrobras held 10 per cent of Sete's shares and equity investors held the remaining 90 per cent. *Id.* Notably, Petrobras filled Sete with its own executives. Sete's new CEO, João Carlos de Medeiros Ferraz (Ferraz), was a Petrobras veteran who had served since 2008 as Petrobras' General Manager of Special Projects Financing, in which capacity he was responsible to develop the plan to exploit the Pre-Salt Reserves and "negotiat[e] with all potential capital investors in Sete Brasil." *Id.* at 40. As Sete's COO, Petrobras appointed Pedro José Barusco Filho (Barusco), Petrobras' long-time Executive Manager of Engineering. *Id.* at 40, 42. Both Ferraz and Barusco worked for Petrobras and Sete simultaneously for several months until Sete's shareholders officially approved their positions. *Id.* at 42, 51.

"[F]rom Sete's formative stages," Petrobras and Sete sought international investors for Sete, including investors based in the United States. *Id.* at 47. In 2010, for example, Santander drew up a list of potential investors which named certain U.S. companies and Petrobras kept a map of the United States "showing the locations of fifteen potential U.S. investors." *Id.* at 48. Petrobras also participated in two

conferences held in Brazil in 2010 and 2011, at which it pitched the opportunity to invest in Sete. Both conferences were hosted by a U.S. company and potential U.S. investors attended. *Id.* at 48–49.

EIG learned about Sete on its own, however, when Kevin Corrigan (Corrigan), an EIG senior investment professional, received an email in 2010 about Sete from a professional colleague who was unaffiliated with Petrobras. *Id.* at 43. At the time, EIG was "seeking opportunities to invest in Brazil." *Id.* By October 2010, EIG was in contact with Santander, which sent Corrigan a Petrobras presentation about the Pre-Salt Reserves that touted the opportunity to "partner[] with Petrobras." *Id.* at 50–51. That December, Santander gave EIG access to a virtual data room "that contained detailed information about the Sete investment opportunity." *Id.* at 51. EIG used the data room to conduct a "months-long diligence process" regarding investing in Sete, which process involved analyzing thousands of pages of documents. *Id.* at 71.

EIG also met with Petrobras and Sete executives several times. Ferraz hosted Corrigan in Brazil in March 2011 to discuss investing in Sete. *Id.* at 51. A few months later, EIG executives returned to Brazil to meet with Ferraz (now the confirmed CEO of Sete) and Almir Barbassa, Petrobras' CFO and Chief Investor Relations Officer. *Id.* EIG representatives met with Barbassa in Brazil again in March 2012 and toured one of the shipyards slated to build the drilling rigs. *Id.*

EIG ultimately chose to invest in Sete. It entered into a series of investment agreements, including in June 2011 and July 2012, and made its first payment on August 3, 2012. *Id.* at 43. Its investments, which continued until January 2015, totaled roughly $221 million. *Id.* at 44. EIG's investment did not prove fruitful. Unbeknownst to it, Petrobras and Sete

executives were engaged in rampant corruption that ultimately led to Sete's collapse. These executives, including Ferraz and Barusco, solicited bribes from shipyards in return for drilling rig construction contracts and then split part of the graft amongst themselves while passing the rest on to members of the Workers' Party, Brazil's governing political party. *Id.* at 38. A Brazilian criminal investigation called Operation Lava Jato (Operation Car Wash) uncovered the corruption in 2014 as Sete was attempting to secure long-term financing deals so that it could meet its obligations to the shipyards. *Id.* at 38, 44–45. The February 2015 public disclosure of Sete's involvement in the scheme caused the lenders to pull out. Unable to meet its obligations or to obtain credit, Sete became bankrupt. *Id.* at 38, 45. "EIG's entire investment in Sete was lost." *Id.* at 45.

In 2016, EIG sued Petrobras for fraud, among other delicts. Petrobras moved to dismiss, arguing it was entitled to foreign sovereign immunity as an instrumentality of the state of Brazil. The district court denied the motion. *See EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A.*, 246 F. Supp. 3d 52, 73 (D.D.C. 2017). In *EIG II*, we affirmed the district court's denial on interlocutory appeal, holding that EIG's allegations brought the case within the FSIA's exception to sovereign immunity for defendants whose commercial activity "causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2); *see EIG II*, 894 F.3d at 345. Specifically, we reasoned that EIG had "made out a *prima facie* case for jurisdiction by alleging that Petrobras specifically targeted U.S. investors for Sete; that Petrobras intentionally concealed the ongoing fraud at Petrobras and at Sete; and that money invested in Sete was used to pay bribes and kickbacks." *Id.* (internal citations omitted).

On remand from *EIG II*, the parties conducted discovery and cross-moved for summary judgment on liability; Petrobras also moved for summary judgment on immunity grounds. The

district court again rejected Petrobras' assertion of sovereign immunity, reasoning that EIG had met its burden of production "by adducing facts, supported by proof, satisfying the three elements of the *prima facie* case set forth in *EIG II*." *EIG III*, 621 F. Supp. 3d at 47. As relevant here, the court found that there was "ample evidence showing that Petrobras 'specifically targeted U.S. investors for Sete.'" *Id.* (quoting *EIG II*, 894 F.3d at 342). After reviewing the evidence, it concluded that Petrobras had "targeted" EIG because "Petrobras engaged with EIG in a sustained course of dealing over many months that conveyed its desire to obtain an investment from EIG." *Id.* at 51. The court then granted summary judgment to EIG on liability but reserved the damages issue for trial. Thus, the court denied Petrobras' summary judgment motion and granted EIG partial summary judgment.

Petrobras appealed the denial of its sovereign immunity assertion. EIG moved to dismiss the appeal, which a motions panel referred to us. Order, *EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro, S.A.*, No. 22-7118 (December 27, 2022).

## II. Analysis

### A. Jurisdiction

We first address EIG's threshold challenge to our appellate jurisdiction. *In re Brewer*, 863 F.3d 861, 868 (D.C. Cir. 2017). Our appellate jurisdiction extends only to the "final decisions of the district courts." 28 U.S.C. § 1291. These decisions include not only final judgments but also collateral orders, "a small class of decisions that conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and are effectively unreviewable on appeal from a final judgment." *Citizens for Resp. & Ethics in Wash. v. Dep't of Homeland Sec.*, 532 F.3d 860, 864 (D.C. Cir. 2008) (cleaned up). The denial of a foreign

sovereign's assertion of sovereign immunity ordinarily qualifies as a collateral order. *See Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1025 (D.C. Cir. 1997).

EIG contends that treating the district court's immunity ruling as a collateral order contravenes the Supreme Court's instruction in *Johnson v. Jones* that interlocutory appeals should decide only "issues of law." 515 U.S. 304, 317 (1995). By contrast, cases involving "*fact*-related dispute[s]," including "which facts a party may, or may not, be able to prove at trial," *id.* at 307, 313, are inappropriate for interlocutory review because those issues are "not truly 'separable' from the plaintiff's claim," *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). EIG argues that *EIG II* already settled the relevant issue of law and thus this appeal centers on the fact-bound issue of whether the district court correctly found that Petrobras "targeted" U.S. investors. This, EIG says, is precisely the type of "evidence sufficiency" determination that does not constitute a collateral order. *See Johnson*, 515 U.S. at 313.

EIG overreads *Johnson*. As the Court later clarified, "*Johnson* held, simply, that determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case." *Behrens*, 516 U.S. at 313; *see also Ortiz v. Jordan*, 562 U.S. 180, 188 (2011) ("[I]nstant appeal is not available, *Johnson* held, when the district court determines that factual issues genuinely in dispute preclude summary adjudication."). But Petrobras does not dispute the district court's factual determinations; instead, it disagrees with the district court's view of the legal significance of those facts. An interlocutory appeal does not fall afoul of *Johnson* merely because it "require[s] the court to apply law to facts." *See Jungquist*, 115 F.3d at 1026. On the contrary, the Supreme

Court has made clear that "*Johnson* permits" a defendant "to claim on appeal that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment" nevertheless does not overcome the defendant's assertion of immunity. *Behrens*, 516 U.S. at 313; *see also Johnson*, 515 U.S. at 319 (Whether "a given set of facts violates clearly established law" is a "reviewable determination."). We remain free under *Johnson* to exercise appellate jurisdiction to determine whether Petrobras is entitled to sovereign immunity as a matter of law given the facts as determined by the district court. *See Farmer v. Moritsugu*, 163 F.3d 610, 614 (D.C. Cir. 1998).[1]

## B. Merits

The merits issue before us is whether the district court properly denied Petrobras' summary judgment motion on sovereign immunity, an issue we review *de novo*. *See Price v.*

---

[1] Our *Oscarson* precedent does not help EIG's position. *Oscarson v. Off. of Senate Sergeant at Arms*, 550 F.3d 1 (D.C. Cir. 2008). There, as EIG emphasizes, the facts were not in dispute but we nevertheless found that we lacked jurisdiction under *Johnson*. *See id.* at 5–6. The critical distinction is that *Oscarson* involved "fact-rich legal issues" that were "difficult to separate from the merits of the underlying action." *Id.* at 5; *see also id.* (the appeal "mingl[ed]" the "preliminary and merits issues"). Although an interlocutory appeal often requires the court to apply law to facts, "jurisdiction may be denied . . . if the court concludes that the facts are too blurred to support review on the law." 15A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3914.10.4, 762–64 & n.49 (3d ed. 2022) (citing *Oscarson* as an example). That is not the case here, as we have a straightforward set of facts and a legal issue regarding the FSIA distinct from the merits of EIG's claims. *See Kimberlin v. Quinlan*, 199 F.3d 496, 503 (D.C. Cir. 1999) (*Johnson* precludes interlocutory review only "[w]hen the law and the fact issues are not separable").

*Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 91 (D.C. Cir. 2002). Under the FSIA, "a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Nonetheless, the FSIA embodies a "restrictive view of sovereign immunity." *EIG II*, 894 F.3d at 344 (quoting *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)). The plaintiff bears only the initial burden to "produc[e] evidence that an exception applies," after which the defendant "bears the ultimate burden of persuasion to show the exception does not apply." *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1183 (D.C. Cir. 2013).

EIG relies on the direct-effect exception to the FSIA, under which a U.S. court can exercise jurisdiction over a foreign sovereign if the sovereign's commerce-related conduct "causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). The plaintiff must produce evidence "that the 'lawsuit is (1) based upon an act of a foreign state outside the territory of the United States; (2) that was taken in connection with a commercial activity of the foreign state outside this country; and (3) that caused a direct effect in the United States.'" *EIG II*, 894 F.3d at 345 (quoting *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 611 (1992) (alterations, ellipses and internal quotation marks omitted)). The parties contest only the final element: directness. They dispute whether the evidence produced at summary judgment bears out the allegations we found sufficient to show a direct effect at the dismissal stage. In *EIG II*, we held that EIG had met its burden of production "by alleging that Petrobras specifically targeted U.S. investors for Sete; that Petrobras intentionally concealed the ongoing fraud at Petrobras and at

Sete; and that money invested in Sete was used to pay bribes and kickbacks." *EIG II*, 894 F.3d at 345 (citations to the record omitted). The parties now focus on whether the evidence supports the finding that Petrobras "specifically targeted" EIG or other U.S. investors.[2] But targeting is not the touchstone of our inquiry. We drew that term not from the FSIA's text or our precedent but from EIG's allegations. *See id.* (citing EIG's pleadings); *see also id.* at 342 (citing the record for the allegation that "Petrobras specifically targeted U.S. investors for Sete"). *EIG II* held simply that EIG's targeting allegations were *sufficient* to show "a direct effect in the United States." It did not hold that targeting was the only way to satisfy the statute. The governing test remains whether Petrobras "cause[d] a direct effect in the United States" regardless of how it did so. 28 U.S.C. § 1605(a)(2).

A "direct" effect is one that "follows 'as an immediate consequence of the defendant's activity.'" *Weltover*, 504 U.S. at 618 (quotation omitted and ellipses removed). It "has no intervening element, but, rather, flows in a straight line without deviation or interruption." *Princz v. Federal Republic of Germany*, 26 F.3d 1166, 1171 (D.C. Cir. 1994) (quotation omitted). A direct effect need not be substantial or foreseeable, *see Weltover*, 504 U.S. at 618, but it cannot be the result of mere happenstance or coincidence. *See Cruise Connections Charter Mgmt. 1, LP v. Att'y Gen. of Canada*, 600 F.3d 661, 665 (D.C. Cir. 2010) ("[H]arm to a U.S. citizen, in and of itself, cannot satisfy the direct effect requirement."); *EIG II*, 894 F.3d at 348 (noting the Second Circuit's holding that "some financial loss from a foreign tort cannot, standing alone, suffice to trigger the exception" (quoting *Antares Aircraft, L.P. v.*

---

[2] Petrobras argues that "EIG fails the first prong of the *EIG II* test, which requires that Petrobras have specifically targeted EIG or other U.S. investors." Appellant's Br. at 15.

*Federal Republic of Nigeria*, 999 F.2d 33, 36 (2d Cir. 1993))).
We believe these requirements are met here.

Petrobras caused a direct effect in the United States because, as the district court correctly observed, "Petrobras engaged with EIG in a sustained course of dealing over many months that conveyed its desire to obtain an investment from EIG—one that ultimately resulted in an equity investment worth hundreds of millions of dollars." *EIG III*, 621 F. Supp. 3d at 51. No matter which party initiated the talks, Petrobras sought to convince EIG to invest in Sete. After all, Santander, Petrobras' financial advisor, gave EIG access to a virtual data room so that EIG could assess the investment opportunity. *Id.* at 57. "Only potential investors were given access to the Data Room." *Id.* Petrobras' top executives, including Ferraz and Barbassa, met with EIG representatives no fewer than three times in Brazil to help secure the investment. *See id.* at 51. Petrobras tries to paint itself as the passive recipient of EIG's unwanted attention but investors do not force themselves to make a $221 million investment. Petrobras' actions "facilitated and promoted" EIG's investment, directly leading to both the investment and EIG's ultimate injury when the investment was lost. *Id.* at 50. *See Cruise Connections*, 600 F.3d at 665 (direct-effect exception satisfied when defendant's termination of a contract "led inexorably to the loss of revenues under [plaintiff's] third-party agreements").[3]

---

[3] Petrobras attempts to support its characterization of the facts by pointing to part of Corrigan's testimony that the district court excluded as hearsay. *See EIG III*, 621 F. Supp. 3d at 51–52. Corrigan testified that his impression from October 2010 talks with Santander was that Petrobras did not want international investors in Sete. He also testified that "as of March 2011, Petrobras had not expressed interest in EIG being an investor in Sete Brasil." *Id.* at 51. EIG argues that this evidence was wrongly excluded and is proof that "EIG had

The facts here are stronger than in *Atlantica*, the Second Circuit case we relied on in *EIG II*. *See EIG II*, 894 F.3d at 345 (discussing *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 110 (2d Cir. 2016)). There, the court found the direct-effect exception satisfied when the plaintiffs invested in the defendant's securities after receiving the defendant's fraudulent memorandum about the securities from "third-party intermediaries," not from the defendant itself. *Atlantica*, 813 F.3d at 113 (alteration omitted). Although there was no allegation that the defendant met or directly communicated with the plaintiffs, there was a direct effect because the securities "were marketed in the United States and directed toward United States persons" and thus "the defendant contemplated and acted to encourage investment by United States persons." *Id.* at 110–11. Here, by contrast, there was direct and extensive contact between Petrobras and EIG.

Nor was the direct effect in the United States the result of happenstance or coincidence. Indeed, it was wholly foreseeable. In *EIG II*, we noted that "EIG alleges that its United States presence was not mere happenstance to Petrobras and Sete, but that Petrobras and Sete 'specifically targeted' U.S. investors." *EIG II*, 894 F.3d at 348 (quoting the record). The summary judgment evidence substantiates these allegations. Both Santander and Petrobras made lists of potential U.S. investors and Petrobras pitched the Sete

---

not been targeted by Petrobras." Appellant's Br. at 24. We do not think the district court abused its discretion in excluding the testimony, *see Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 969 (D.C. Cir. 2016), but it would change little even if we considered it. Regardless of Corrigan's impression, the concrete acts taken by Petrobras and its agent, Santander, including months-long access to Petrobras' virtual data room, show that Petrobras was affirmatively cultivating a relationship with EIG as a potential investor.

investment opportunity at two conferences hosted and attended by potential U.S. investors. *See EIG III*, 621 F. Supp. 3d at 47–49. The fact that the conferences were in Brazil and also attended by non-American investors does not alter the fact that Petrobras contemplated and tried to attract U.S. investment. Thus, this is not a case "in which the plaintiff's U.S. citizenship was the *only* connection to the United States." *See Cruise Connections*, 600 F.3d at 665.[4]

Finally, Petrobras argues that any effect from its actions was not sufficiently "direct" because superseding events broke the chain of causation. In essence, Petrobras contends that it had handed everything over to Sete before EIG decided to invest. From there, it was Sete, an independently financed and managed company, that encouraged and ultimately accepted EIG's investment.

We are unconvinced. As we recognized in *EIG II*, "multiple but-for causes" of an injury do not "break the chain of causation for any one of them." *EIG II*, 894 F.3d at 346; *see also id.* ("Petrobras cannot oust the court of jurisdiction in a lawsuit resulting from its alleged fraud simply because Sete's third-party lenders might also have injured EIG."). That Sete

---

[4] Petrobras misunderstands the relevance of the evidence related to other U.S. investors. It argues that "whether Petrobras targeted U.S. investors other than EIG is irrelevant because EIG's claims are not 'based upon' anything Petrobras said or did with respect to those investors." Appellant's Br. at 31; *see* 28 U.S.C. § 1605(a)(2) (the direct-effect exception to the FSIA requires the suit to be "based upon" the foreign sovereign's commercial activity). The other-investor evidence does not address what EIG's suit is "based upon" but simply provides further evidence, in addition to Petrobras' lengthy course of dealing with EIG itself, that it was no coincidence that the effects of Petrobras' actions were "felt" in the United States. *See Atlantica*, 813 F.3d at 110.

independently injured EIG does not relieve Petrobras of liability for its own fraudulent acts. That is particularly true here where the district court effectively concluded that Petrobras and Sete were operating in tandem. The court found that there was "no genuine dispute that a corruption scheme was sewn into Sete's very fabric from the start." *EIG III*, 621 F. Supp. 3d at 55; *see also id.* at 53 ("The evidence shows that a bribery scheme identical to the one executed at Petrobras was built into Sete's very DNA."). There was uncontroverted testimony that "Petrobras set the bribery scheme in motion at Sete" by "hatch[ing] the plan to embed a kickback condition within the contracts for drilling rigs" and installing its own corrupt executives as Sete's leaders. *Id.* at 78. Properly viewed, Sete did not break the chain of causation; it continued it. By beginning the bribery scheme and seeking EIG's investment, Petrobras knocked over the first domino; it cannot shift blame to the end domino for the result.

Because we affirm the denial of Petrobras' summary judgment motion on immunity grounds, we must address Petrobras' argument that the district court prematurely granted summary judgment to EIG on the merits. Foreign sovereign immunity confers "immunity from litigation burdens as well as from the entry of adverse judgments," which means that a suit against a foreign sovereign follows a set sequence. *See Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 584 (D.C. Cir. 2020). "[A] district court must resolve immunity assertions 'as early in the litigation as possible,' even if that requires jurisdictional discovery and factual resolution of immunity questions to take place *before* the sovereign is required to defend the merits." *Id.* (emphasis added) (quoting *Phoenix Consulting*, 216 F.3d at 39). Petrobras asks us to vacate the district court's grant of summary judgment to EIG on the theory that the district court violated the immunity-then-

merits sequence by ruling on the merits before it had conclusively resolved Petrobras' assertion of immunity.

The confusion here stems from the fact that the parties cross-moved for summary judgment on different grounds. Despite its right to insist on having the immunity issue resolved first, Petrobras argued that it was entitled to summary judgment both because it enjoyed sovereign immunity and because EIG's claims failed on the merits. *EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A*, Civ. No. 1:16-cv-00333 (Sept. 1, 2021), ECF No. 156. EIG, however, focused only on the merits and did not move for summary judgment on the issue of sovereign immunity. *Id.* (Sept. 1, 2021), ECF No. 153. The district court rejected Petrobras' immunity argument and "proceed[ed] to the merits" because it was "satisfied that it has jurisdiction over EIG's claims under the FSIA's direct-effect exception." *EIG III*, 621 F. Supp. 3d at 54. The court ultimately denied Petrobras' motion for summary judgment in full and granted EIG partial summary judgment, ruling for EIG on the merits "as to liability" and reserving the issue of damages for trial. *Id.* at 84.

The issue is whether the district court was permitted to reach the merits given that it did not affirmatively grant summary judgment to EIG on the issue of sovereign immunity; instead, it denied Petrobras' assertion of sovereign immunity at the summary judgment stage. The difference is an important one. A summary judgment grant conclusively determines an issue but a denial leaves the issue open for further factual development and resolution at trial. *See Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1251 (10th Cir.), *as modified on reh'g* (Oct. 20, 1992) ("[A] denial of summary judgment is not a judgment, but 'merely a judge's determination that genuine issues of material fact exist.'" (quotation omitted)); *Switzerland Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.*, 385

U.S. 23, 25 (1966) ("[T]he denial of a motion for summary judgment . . . is strictly a pretrial order that decides only one thing—that the case should go to trial."). Indeed, the district court here recognized that it had left the immunity issue unresolved. At a status conference following the ruling, the judge stated that "I don't think I've entered judgment on the issue of sovereign immunity; rather, I simply said that Petrobras has not carried its burden to show that it's immune," noting that this "in theory, could leave open the question for trial." *EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A*, Civ. No. 1:16-cv-00333 (Aug. 25, 2022), ECF No. 201 at 15–16.

We need not decide whether the district court erred or what the proper remedy might be if it did. As Petrobras recognizes, the district court's merits ruling does not qualify as a collateral order as to which we have appellate jurisdiction. Even assuming we could nonetheless review it via pendent jurisdiction as Petrobras urges, doing so is discretionary and we decline to do so here. *See Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1136 (D.C. Cir. 2004) ("[W]hether or not we have authority to exercise pendent appellate jurisdiction in this case, there is no question that we have discretion to decline to do so."). We exercise pendent jurisdiction sparingly and "only when substantial considerations of fairness or efficiency demand it." *Id.* at 1133 (quotation omitted). Here, neither fairness nor efficiency weighs in favor of interlocutory review. Petrobras voluntarily briefed the merits and thus invited the district court to rule upon them even if the immunity question were not yet conclusively resolved. *Cf. Process & Indus. Devs. Ltd.*, 962 F.3d at 579–80 (district court erred in requiring foreign sovereign, over its objection, to simultaneously brief immunity and merits issues). The district court did so thoroughly; our reversal of that ruling would only result in duplicative proceedings if Petrobras is

ultimately denied sovereign immunity conclusively. Neither party is prejudiced if this issue is left for the district court to resolve on remand.

For the foregoing reasons, we deny EIG's motion to dismiss the appeal for lack of jurisdiction and affirm the district court's denial of Petrobras' summary judgment motion on immunity grounds. We remand for further proceedings consistent with this opinion.

*So ordered.*