**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gerald D. CASTOR,**
**Defendant–Appellant.**

**Nos. 89–3653, 90–2444.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 10, 1990.

Decided June 4, 1991.

294

Timothy M. Morrison, Office of U.S. Atty., Indianapolis, Ind., for plaintiff-appellee.

William H. Dazey, Jr., Qualkinbush & Dazey, Indianapolis, Ind., for defendant-appellant.

Before CUDAHY, FLAUM and MANION, Circuit Judges.

CUDAHY, Circuit Judge.

Couched in the vernacular, Gerald Castor made two prospective business partners "offers they could not refuse." As a result he was convicted of violating the federal extortion law. He appeals these convictions as well as his separate conviction for possession of firearms by a felon.[1] We affirm on all grounds.

Philip Bidwell owned and operated Better Life International, Inc., in Florida, manufacturing Smokey Mountain Chew, a chewing tobacco substitute made primarily from red clover. John Summers, inventor of the "herbal chew," served as research and development director for Better Life. During 1985 and 1986, Gerald Castor and his brother Marvin began contacting Bidwell about the possibility of marketing Smokey Mountain Chew in Indiana. Bidwell expressed mild interest at best, but the Castors were persistent.

They succeeded in bringing John Summers to Indiana for a meeting about the product. At that meeting Marvin Castor, using an alias, questioned Summers intently. When Summers' responses to these overtures left the brothers unsatisfied, Marvin tried "convincing" the inventor in ways familiar to "B" movie-goers: "[Y]ou can be foolish and not sign this [agreement]. But we have other ways of dealing with this." Tr. II at 77. Getting the message, Summers left the meeting in a flurry. Next the Castors paid a visit to Bidwell down in Florida, where their proposals met with the same disinterest. The brothers grew angry at this point. Marvin Castor, who again did the talking, asked Bidwell if he had "ever felt the end of a bullet," and explained that the Chicago mafia wanted Bidwell's business or his head. Tr. II at 27. Bidwell escaped the meeting shaken but unscathed, and phoned the local sheriff.

Evidence admitted at trial also supported the allegation that Gerald and Marvin Castor included others in their plan of intimidation, even offering one co-worker $10,000 to kill John Summers. Tr. II at 142. Gerald Castor was eventually charged with conspiracy to commit extortion and attempted extortion in violation of the Hobbs Act, 18 U.S.C. § 1951 (1988), and traveling in interstate commerce to attempt extortion in violation of the Travel Act, *id.* § 1952.

In an unrelated incident the following month, Gerald Castor was discovered in possession of a firearm. As a prior felon, he was arrested and charged with possessing a firearm in interstate commerce, an act made illegal for felons under 18 U.S.C. app. I, § 1202(a) (1982).[2] The charges were grouped together, but pursuant to defendant's motion they were severed for trial.[3] Castor was first convicted of the firearms charge, for which he was sentenced to eighteen months. He was then convicted on the extortion and travel charges and sentenced to two concurrent terms of twelve years and one consecutive term of five years.[4]

The defendant's first complaint on appeal concerns the district court's denial of his motion, drafted *pro se* and styled "Writ of Habeas Corpus/Motion to Dismiss and Memorandum at Law." Appellant's Br.,

---

**1.** Because this appeal refers to two separate trials, the transcript for the first trial (the firearms charge) is referred to as Tr. I, and the transcript for the second trial (the extortion charges) is referred to as Tr. II.

**2.** Section 1202 was subsequently repealed, effective one hundred eighty days after the date of the repealer, May 19, 1986. Since the above incident occurred on May 6, 1986, the conviction is unaffected.

**3.** Severed likewise from the other two groups was a group of four counts of Hobbs Act and Travel Act violations. These counts ended in two convictions and two dismissals pursuant to a plea agreement. Defendant does not appeal from this disposition.

**4.** The judgment did not specify whether these sentences run consecutively to, or concurrently with, the eighteen month sentence imposed for the firearms violation. The issue is likely moot, however, given that the defendant received consecutive sentences totaling twenty-five years imprisonment pursuant to his separate guilty plea, *supra* note 3, which the district court specified were to run concurrently with the other sentences.

app. at 44. Castor argues before us that the motion contained two arguments: it challenged the federal government's right to custody of the defendant and it asked the federal court to vacate the charges pending against him in state court. The district judge understood the motion to raise only the second issue; nevertheless the motion was properly denied on both grounds.

■ First, we inquire whether the federal court's custody of the defendant was appropriate. When the federal proceedings began, Castor was in state custody, awaiting trial on state criminal charges. The government sought and received a writ of habeas corpus *ad prosequendum* under 28 U.S.C. § 2241(c)(5) (1988). The defendant argues that, as a "request for temporary custody," the writ falls within the reach of the Interstate Agreement on Detainers, 18 U.S.C. app. II (1988), and as such requires an evidentiary hearing on the issue of the request's legality. Castor requested such a hearing but it was refused.

The Interstate Agreement on Detainers is an agreement between the federal government and the governments of the several states concerning the processing of requests from a jurisdiction for custody of a prisoner then held in the penal system of another jurisdiction. By its own terms it was enacted in recognition that "difficulties of obtaining the speedy trial of persons already incarcerated in other jurisdictions [] produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." *Id.* § 2, art. I. But the defendant's argument fails at the outset. The Agreement specifically applies only to "a person [who] has entered upon a term of imprisonment in a penal or correctional institution of a party State...." *Id.* § 2, art. III(a). At the time of his removal from state custody, Castor had not begun a term of imprisonment, nor does he allege that he

was involved in a rehabilitation program. Whatever constraints the Agreement places on the execution of a writ of habeas corpus *ad prosequendum*—and there may be none in this context, *see United States v. Mauro*, 436 U.S. 340, 359–61, 98 S.Ct. 1834, 1846–48, 56 L.Ed.2d 329 (1978) [5]—Castor cannot avail himself of them as he was not incarcerated at the time he was summoned into federal court.

■ The defendant next alleges that the district court erred in rejecting his argument for dismissal of the state court charges that were pending against him. From our reading of the motion, it appears to request dismissal on Speedy Trial Act grounds. The district court succinctly held that Castor had not exhausted his state remedies. Order at 2–3 (August 30, 1989); Appellant's Br., app. at 78, 79–80. We believe this ruling was correct, given the defendant's failure to provide us details of his efforts at relief from the state courts.

■ Criminal defendants incarcerated by a state awaiting trial may seek a writ of habeas corpus from federal courts. 28 U.S.C. § 2241(c)(3) (1988); *Atkins v. Michigan*, 644 F.2d 543, 545–47 (6th Cir.), *cert. denied*, 452 U.S. 964, 101 S.Ct. 3115, 69 L.Ed.2d 975 (1981); *United States ex rel. Scranton v. New York*, 532 F.2d 292, 294 (2d Cir.1976); *United States ex rel. Triano v. Superior Court of New Jersey, Law Div.*, 393 F.Supp. 1061, 1065 (D.C.N.J.), *aff'd*, 523 F.2d 1052 (3d Cir.1975), *cert. denied*, 423 U.S. 1056, 96 S.Ct. 787, 46 L.Ed.2d 645 (1976); *see also Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 488–89, 93 S.Ct. 1123, 1126–27, 35 L.Ed.2d 443 (1973). While these applicants are not subject to the statutory requirement of exhaustion of remedies, 28 U.S.C. § 2254(b) (1988) (exhausting state remedies required of "person in custody pursuant to the judgment of a State court"), federal courts nevertheless may require, as a matter of

---

**5.** In *Mauro,* the Supreme Court determined that the Agreement applied only when a "detainer" had been filed by the jurisdiction seeking custody of the prisoner for trial. It ruled that the federal writ of habeas corpus *ad prosequendum* is not a detainer for these purposes, but it nevertheless dismissed one prisoner's federal conviction because the writ filed in his case was preceded by a detainer. Neither party to the case before us has indicated that a "detainer" was employed prior to issuance of the writ, but this circumstance would not affect our analysis above.

comity, that such detainees exhaust all avenues of state relief before seeking the writ. *Baldwin v. Lewis,* 442 F.2d 29, 31–33 (7th Cir.1971).

■ When an applicant seeks pretrial habeas relief due to an alleged violation of his right to a speedy trial, the exhaustion requirement is not onerous. In *Braden,* the Supreme Court held that a defendant before trial had exhausted his state court remedies for denial of a speedy trial by "present[ing] his federal constitutional claim of a *present* denial of a speedy trial to the courts of Kentucky." 410 U.S. at 491, 93 S.Ct. at 1127 (emphasis in original). Notwithstanding the lenient exhaustion test for a defendant seeking speedy trial relief, Castor has presented no adequate argument that he fulfilled this requirement. In his motion to dismiss, the defendant asserts in conclusory fashion that he "asserted his right to be given a speedy trial after some 30 months of being incarcerated in county jails waiting to go to trial on state charges." Appellant's Br., app. at 51. The government responded that the defendant had not exhausted his state remedies for this alleged violation, Government's Response to Defendant Gerald Castor's Writ of Habeas Corpus/Motion to Dismiss at 1 (Aug. 28, 1989), but the defendant submitted no evidence of his claimed request of the state courts nor specified its circumstances. Thus he failed both below and before us adequately to allege that he raised the issue before any state court, much less before successive reviewing tribunals, in a way that might be necessary for exhaustion. *Cf. Baldwin,* 442 F.2d at 31. We must therefore agree with the district court that, absent a more adequate showing by the defendant, the request for

habeas relief must be denied for lack of exhaustion of state remedies.[6]

■ Castor also appeals the denial of his other motion to dismiss—this one based on alleged government misconduct. In this motion, the defendant made a showing, in the form of an unsworn affidavit, that a female investigator working for defense counsel carried on a relationship with an FBI agent assigned to the case. Appellant's Br., app. at 57. Allegedly, discussions during that relationship about the case violated the defendant's sixth amendment right to counsel.

Where the sixth amendment right to attorney-client confidentiality exists, prosecutorial violation of that privilege might lead to reversal of a resulting conviction if the defendant could show prejudice. *United States v. Kelly,* 790 F.2d 130 (D.C.Cir. 1986); *United States v. Irwin,* 612 F.2d 1182 (9th Cir.1980). We agree with the district court that the particulars of the affidavit in this case did not require a hearing or dismissal of the charge. First, the government specifically eschewed any intent to call the FBI agent as a witness. Order on Misc. Motions at 2; Appellant's Br., app. at 78. This renunciation does not entirely preclude a sixth amendment claim, for it leaves open the possibility that the government acquired privileged information that enabled it better to investigate its case. *Cf. United States ex rel. Shiflet v. Lane,* 815 F.2d 457, 464 (7th Cir.1987), *cert. denied,* 485 U.S. 965, 108 S.Ct. 1234, 99 L.Ed.2d 433 (1988); *United States v. White,* 879 F.2d 1509, 1513 (7th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1471, 108 L.Ed.2d 609 (1990). Nevertheless, the defendant concedes that the affidavit reveals no information about him that was passed, and thus admits he cannot show

---

**6.** Defendant's lack of specificity would, moreover, hinder our analysis of the speedy trial claim on its merits, given the question of the delay following the request and the effect, if any, of the interposition of federal proceedings.

Our disposition allows us to avoid an issue not discussed by either party to this case. A suggestion in *Braden* indicates that the result in that case rested in part on the relief the defendant sought, namely to compel the state court to

proceed with his trial. 410 U.S. at 491, 93 S.Ct. at 1128 (defendant makes "no effort to abort a state proceeding or to disrupt the orderly functioning of state judicial processes"). It is unclear how the *Braden* exhaustion requirement is affected when, as here, defendant seeks dismissal of the state indictment. *Cf. Atkins,* 644 F.2d at 546–47 (petition for writ to dismiss state indictment on speedy trial grounds requires exhaustion by standing trial).

prejudice.[7] Without any proof of governmental intrusion or actual prejudice, the defendant cannot assert that the mere relationship of an investigator working for his attorney with an FBI agent assigned to the case violates his constitutional right to counsel. *See Weatherford v. Bursey,* 429 U.S. 545, 554–57, 97 S.Ct. 837, 843–45, 51 L.Ed.2d 30 (1977) (rejecting *per se* rule in sixth amendment attorney-client privilege cases). In this context, we see no abuse of discretion in the refusal of an evidentiary hearing on the matter, and we affirm the denial of the motion to dismiss.

■ At the close of the government's case in the trial for violating the federal firearms law, the defendant moved for a judgment of acquittal, arguing that the government had failed to prove the interstate commerce element. Tr. I at 50–51. It is required for a conviction under 18 U.S.C. app. I, § 1202(a), that the weapon possessed by the felon have traveled in interstate commerce. To this end the government called an expert witness who testified to the weapon's history. Having failed to convince the district court that this testimony was inadequate, the defendant now changes course and argues (against well-settled precedent) that the government presented no proof of his *knowledge* that the gun moved in interstate commerce. Of course, the defendant has waived this argument by failing to make it to the district court. *Datamatic Services, Inc. v. United States,* 909 F.2d 1029, 1032 (7th Cir.1990). But even more important, there is no requirement in the statute that a defendant must *know* the weapon traveled interstate. Under the statute, the government must prove that the weapon was transported interstate; it

need not show that the defendant knew of this fact. *United States v. Sutton,* 521 F.2d 1385, 1391 (7th Cir.1975); *United States v. Horton,* 503 F.2d 810, 812–13 (7th Cir.1974).

■ The defendant claims that his second trial was tainted by the admission of certain prior convictions in violation of Fed. R.Evid. 609—namely a 1984 felony conviction for battery while armed and the recent conviction for weapons possession by a felon. Tr. II at 251–52. The district court heard extensive argument on the admissibility of these convictions, Tr. II at 177–83, and upon admitting them, carefully instructed the jury about their limited purpose, Tr. II at 252–53. Castor's contention that the trial judge thus abused his discretion is unpersuasive. The district court correctly used the five-part test announced in *United States v. Mahone,* 537 F.2d 922, 929 (7th Cir.), *cert. denied,* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976),[8] and found the impeachment value of these crimes to outweigh their prejudicial effect. Specifically, the trial judge recognized the limited impeachment value of a prior felony unrelated to truthfulness, and he also understood the prejudicial effect of placing violent crime evidence before the jury. Nevertheless, the district judge felt the balance tipped in the government's favor due to the centrality of the credibility issue to this case, as well as the importance of the defendant's testimony. Tr. II at 217–22. *Cf. United States v. Rein,* 848 F.2d 777, 782–83 (7th Cir.1988) (admission of prior crimes upheld due to trial judge's belief about centrality of credibility issue and importance of defendant's testimony). We find this painstaking examination to be an adequate basis for the district court's deci-

---

**7.** Any information revealed by the investigator to the FBI agent concerned only defendant's brother Marvin.

**8.** The panel in *Mahone* cited *Gordon v. United States,* 383 F.2d 936, 940 (D.C.Cir.1967), *cert. denied,* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968), to the effect that a trial judge should consider at least five factors in making a Rule 609 determination:

(1) The impeachment value of the prior crime.

(2) The point in time of the conviction and the witness' subsequent history.
(3) The similarity between the past crime and the charged crime.
(4) The importance of the defendant's testimony.
(5) The centrality of the credibility issue. 537 F.2d at 929. *See also United States v. Rein,* 848 F.2d 777, 782 (7th Cir.1988). While the *Mahone* list was intended to be inclusive, not exclusive, defendant has suggested no other factors requiring examination by the trial judge.

sion to admit the prior convictions. Castor's invitation for us to reconsider these contrasting elements weighed by the trial judge mistakes our role in reviewing such evidentiary determinations. *Rein,* 848 F.2d at 781–82.

■ Castor's final argument requires us to reexamine the "claim of right" defense to extortion charges. First articulated in *United States v. Enmons,* 410 U.S. 396, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973), this defense asserts that the defendant had a right to the property in question, and cannot be guilty of wrongfully acquiring it. Several courts have expressed the view that *Enmons* should be limited to its facts, specifically cases of obtaining property by force, threat or use of fear in the context of a labor dispute. *See United States v. Agnes,* 753 F.2d 293, 298–99 (3d Cir.1985); *United States v. Zappola,* 677 F.2d 264, 269 (2d Cir.), *cert. denied,* 459 U.S. 866, 103 S.Ct. 145, 74 L.Ed.2d 122 (1982); *United States v. Cerilli,* 603 F.2d 415, 419 (3d Cir.1979), *cert. denied,* 444 U.S. 1043, 100 S.Ct. 728, 62 L.Ed.2d 728 (1980); *United States v. Warledo,* 557 F.2d 721, 730 (10th Cir.1977). The Court justified the claim of right defense on the basis of congressional understanding, both at the time of the act's passage and after its amendment in 1946, that "the [law] did not interfere in any way with any legitimate labor objective or activity." 91 Cong.Rec. 11,841 (1946), *cited in Enmons,* 410 U.S. at 404, 93 S.Ct. at 1012. However, in a recent appeal involving a Hobbs Act conviction based on fear of economic harm outside the labor context, one circuit actually reversed the conviction for failure to instruct the jury that the defendant must know that he had no legal entitlement to the property extorted. *United States v. Sturm,* 870 F.2d 769 (1st Cir. 1989).

We need not pursue *Sturm* here. For present purposes, the analysis Castor offers was foreclosed by this court in *United States v. Petitjean,* 883 F.2d 1341 (7th Cir. 1989). *Petitjean* involved an extortion by threats of physical harm as well as actual physical attacks. The defendant in that case attempted during cross-examination of the victim to question him regarding any debts the victim might have owed the defendant. Affirming the district judge's refusal to allow this line of questioning, we said, "The existence of any debts owed by [the victim] to Petitjean is not relevant in and of itself." *Id.* at 1348.[9] This holding clearly precludes the application of an *Enmons'* "claim of right" defense in this case. Whatever the contours of that defense may be, they do not reach extortions based on threats of physical violence outside the labor context. As Judge Haight explained, "you cannot beat someone up to collect a debt, even if you believe he owes it to you." *United States v. Zappola,* 523 F.Supp. 362, 368 (S.D.N.Y.1981), *aff'd,* 677 F.2d 264 (2d Cir.), *cert. denied,* 459 U.S. 866, 103 S.Ct. 145, 74 L.Ed.2d 122 (1982). The trial judge in the case before us was correct in denying the "claim of right" instructions offered by the defendant.

The judgment of the district court is therefore

AFFIRMED.

---

**9.** The panel went on to inquire whether the debts had any impeachment value, a question unrelated to the discussion above. *Id.*