433 F.3d 755
 Harvey Frank ROBBINS, Plaintiff-Appellee,
v.
Charles WILKIE, Darrell Barnes, Teryl Shryack, Michael Miller, Gene Leone, David Wallace, Defendants-Appellants.
Pacific Legal Foundation, New Mexico Cattle Growers Association, Washington Farm Bureau, Idaho Farm Bureau, Idaho County Farm Bureau, Owyhee County Farm Bureau, Washington State Grange, and New Mexico Federal Lands Council, Amici Curiae.
 No. 04-8016.
 United States Court of Appeals, Tenth Circuit.
 January 10, 2006.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Edward Himmelfarb, Appellate Staff, Civil Division, Department of Justice (Peter D. Keisler, Assistant Attorney General, John W. Suthers, United States Attorney, District of Colorado, Barbara L. Herwig, Civil Division, Department of Justice, with him on the briefs), Washington, D.C., for Defendants-Appellants.
 Marc R. Stimpert (Karen Budd-Falen, with him on the briefs), Budd-Falen Law Offices, P.C., Cheyenne, WY, for Plaintiff-Appellee.
 Gregory T. Broderick, Counsel of Record, Meriem L. Hubbard, Of Counsel, J. David Breemer, Of Counsel, Pacific Legal Foundation, Sacramento, CA, filed an amici curiae brief for Pacific Legal Foundation, New Mexico Cattle Growers Association, Washington Farm Bureau, Idaho Farm Bureau, Idaho County Farm Bureau, Owyhee County Farm Bureau, Washington State Grange, and New Mexico Federal Lands Council.
 Before KELLY, HENRY and MURPHY, Circuit Judges.
 MURPHY, Circuit Judge.
 
 I. Introduction
 
 1
 Plaintiff-Appellee Harvey Frank Robbins filed suit pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Robbins alleges employees of the Bureau of Land Management ("BLM"), including Defendants-Appellants Charles Wilkie, Darrell Barnes, Teryl Shryack, Michael Miller, Gene Leone, and David Wallace, attempted to extort a right-of-way across Robbins' property in violation of RICO and the Fifth Amendment. Defendants filed a motion for summary judgment on qualified immunity. The district court denied the motion concluding, inter alia, that Robbins had sufficiently alleged violations of his clearly established rights under RICO and the Fifth Amendment. Defendants appealed. This court has jurisdiction pursuant to 28 U.S.C. § 1291 and Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Because the right to be free from retaliation for the exercise of Fifth Amendment rights is clearly established and Defendants' alleged wrongful use of otherwise lawful authority to obtain a right-of-way from Robbins violates clearly established law under the Hobbs Act and Wyo. Stat. Ann. § 6-2-402, we affirm.
 
 II. Background
 
 2
 Robbins owns High Island Ranch in Hot Springs County, Wyoming where he engages in cattle ranching and operates a commercial guest ranch. Robbins purchased the ranch from George Nelson who had granted to BLM a non-exclusive access easement along a road on the ranch. BLM failed to record the easement, however, and Robbins had no notice of it when he purchased and recorded his interest in the ranch. Thus, under Wyoming's recording statute, Robbins took ownership of the ranch unencumbered by the easement. Robbins also had various BLM preference rights, livestock grazing permits, and a special-recreation use permit allowing him to use federal lands adjacent to his property.
 
 
 3
 When BLM learned its easement had been extinguished, it contacted Robbins to discuss obtaining a right-of-way across the ranch. Robbins refused. Robbins alleges that in retaliation for his refusal to grant the right-of-way, Defendants attempted to extort the right-of-way from him. Specifically, Robbins alleges Defendants refused to maintain the road providing access to his property; threatened to cancel, and then cancelled, his right-of-way across federal lands; stated they would "bury Frank Robbins"; cancelled his special recreation use permit and grazing privileges; brought unfounded criminal charges against him; trespassed on his property; and interfered with his guest cattle drives.
 
 
 4
 Robbins brought claims pursuant to Bivens and RICO. Defendants filed a motion to dismiss both claims. The district court granted the motion, reasoning that Robbins had failed to adequately plead damages under RICO, and that the Administrative Procedures Act ("APA") and Federal Tort Claims Act ("FTCA") were alternative, equally effective remedies precluding Robbins' Bivens claim. This court reversed. Robbins v. Wilkie, 300 F.3d 1208 (10th Cir.2002) (hereinafter Robbins I). We held that damages under RICO need not be pled with particularity. Id. at 1211. Moreover, the APA and FTCA did not preclude Robbins' Bivens claims because the APA does not provide a remedy when an official's intentional acts unrelated to agency action violate a party's constitutional rights, and the FTCA is a separate and distinct remedy from Bivens. Id. at 1212-13.
 
 
 5
 Subsequently, Defendants filed a second motion to dismiss on the grounds of qualified immunity. The district court granted the motion in part and denied it in part. See generally Robbins v. Wilkie, 252 F.Supp.2d 1286 (D.Wyo.2003). The district court determined Robbins had sufficiently alleged violations of his clearly established statutory rights under RICO and constitutional right to exclude others from his property under the Fifth Amendment. Id. at 1294-95, 1301-02. The district court dismissed Robbins' Bivens claims for malicious prosecution under the Fourth Amendment and procedural and substantive due process under the Fifth and Fourteenth Amendments. Id. at 1298-1301. Defendants did not appeal this order.
 
 
 6
 Defendants then filed a motion for summary judgment on qualified immunity. Relevant to this appeal, Defendants argued there was not a clearly established constitutional right to exclude others from one's property, and that they could not be held liable under RICO for actions authorized by BLM regulations because those actions are not "wrongful." The district court denied summary judgment on both grounds. With regard to Robbins' Bivens claim, the district court concluded Robbins had a clearly established right to be free from retaliation for exercising his right to exclude others from his property under the Fifth Amendment. Further, the district court determined Robbins had submitted sufficient evidence to support his complaint and Defendants failed to establish there were no issues of material fact. As to Robbins' RICO claim, the district court agreed that predicate acts under RICO must be otherwise wrongful to be actionable. The district court concluded, however, that actions taken by Defendants pursuant to BLM regulations can be wrongful if done with the intent of extorting. Because the district court determined there was an issue of material fact regarding Defendants' motive, summary judgment was denied.
 
 III. Discussion
 A. Jurisdiction
 
 7
 As a preliminary matter, this court ordered the parties to brief the appealability of the district court's order denying summary judgment. This court has appellate jurisdiction over "final decisions" of district courts. 28 U.S.C. § 1291. Under the "collateral order" doctrine, however, some district court orders are considered "final" even though they are entered before a case has ended. Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546-47, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). One such collateral order permitting interlocutory appeal is a denial of qualified immunity. Mitchell, 472 U.S. at 530, 105 S.Ct. 2806. A denial of qualified immunity is only immediately appealable, however, to the extent the district court's decision turns on an abstract issue of law. Id. at 530, 105 S.Ct. 2806; Johnson v. Jones, 515 U.S. 304, 313-14, 317, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). Thus, an appellate court may examine on interlocutory appeal the purely legal question of whether the facts alleged by plaintiff support a claim of violation of clearly established law. Mitchell, 472 U.S. at 528 n. 9, 105 S.Ct. 2806. An appellate court may not, however, review questions of evidentiary sufficiency on interlocutory appeal. Therefore, a portion of a district court order denying qualified immunity is not immediately appealable insofar as the order determines plaintiff's claims are supported by sufficient evidence in the record or disputed issues of material fact exist which preclude summary judgment. Johnson, 515 U.S. at 313, 115 S.Ct. 2151; Foote v. Spiegel, 118 F.3d 1416, 1422 (10th Cir.1997).
 
 
 8
 The district court's denial of qualified immunity in the present case turned on both issues of abstract law and evidentiary sufficiency. The district court determined Robbins had submitted sufficient evidence to support his Bivens claim and there was a disputed issue of material fact regarding Defendants' motive precluding summary judgment on Robbins' RICO claim. We do not have jurisdiction to examine these determinations of evidentiary sufficiency on interlocutory appeal. Johnson, 515 U.S. at 319-20, 115 S.Ct. 2151; Foote, 118 F.3d at 1422. The district court, however, also concluded Robbins sufficiently alleged a violation of his clearly established Fifth Amendment right, and the wrongful use of otherwise lawful authority violates clearly established law under RICO. These abstract issues of law regarding whether a particular law was clearly established are immediately appealable. Mitchell, 472 U.S. at 530, 105 S.Ct. 2806; Foote, 118 F.3d at 1422.
 
 
 9
 Robbins also contends Defendants' failure to appeal the district court's order denying dismissal on qualified immunity precludes Defendants from appealing an order denying summary judgment on the same qualified immunity issues. Robbins reasons that allowing Defendants to appeal a second denial of qualified immunity after failing to appeal the first denial would be an end-run around the timeliness requirements of the notice of appeal provision of the Federal Rules of Appellate Procedure. Fed. R.App. P. 4(a)(1)(B).
 
 
 10
 Although this issue is one of first impression in this circuit, the Supreme Court and several other circuits have addressed the issue. In Behrens v. Pelletier, defendant filed a motion to dismiss on qualified immunity, which the district court denied after dismissing some of plaintiff's claims as time-barred. 516 U.S. 299, 303, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). Defendant appealed the denial of qualified immunity and the Ninth Circuit affirmed. Id. at 303-04, 116 S.Ct. 834. Subsequently, the district court reversed course on the statute-of-limitations question, concluding none of the plaintiff's claims were time barred. Id. at 304, 116 S.Ct. 834. In response, the defendant filed a motion for summary judgment on qualified immunity, including the claims that were previously dismissed as time-barred. Id. The district court denied this motion and the Ninth Circuit dismissed defendant's appeal for lack of jurisdiction. Id. at 304-05, 116 S.Ct. 834.
 
 
 11
 The Supreme Court reversed, concluding there was jurisdiction over the second interlocutory appeal. Id. at 309-311, 116 S.Ct. 834. In so doing, the Court surmised that resolution of the immunity question may "require more than one judiciously timed appeal." Id. at 309, 116 S.Ct. 834 (quotation omitted). The Court reasoned that a defendant should be permitted to raise the qualified immunity defense at successive stages of litigation because different legal factors are relevant at various stages. Id. In particular, in a motion to dismiss, courts are limited to reviewing conduct alleged in the complaint, whereas in a motion for summary judgment, courts examine evidence accumulated during discovery. Id.
 
 
 12
 Several circuits have interpreted and applied Behrens in cases postured similar to the case before us. In Grant v. City of Pittsburgh, the Third Circuit held that a defendant's failure to appeal an order denying dismissal on qualified immunity does not preclude him from appealing a subsequent denial of the same legal arguments in a motion for summary judgment on qualified immunity. 98 F.3d 116, 120-21 (3d Cir.1996). The court adopted the reasoning of Behrens by noting that although defendant's two motions raised the same legal theory, the second motion differed because it relied on matters developed during discovery. Id.; see also Vega v. Miller, 273 F.3d 460, 466 (2d Cir.2001).
 
 
 13
 The Ninth Circuit went further in Knox v. Southwest Airlines by asserting jurisdiction over an appeal of an order denying a second motion for summary judgment after defendant failed to appeal the denial of his first summary judgment motion. 124 F.3d 1103, 1105-06 (9th Cir.1997). Defendants' first motion for summary judgment on qualified immunity was denied by the district court because of a disputed issue of fact. Id. at 1105. Defendant filed a second summary judgment motion making the same legal arguments, but providing additional evidence. Id. Citing Behrens, the Ninth Circuit asserted jurisdiction over defendants' second motion for summary judgment. Id. at 1106.
 
 
 14
 Robbins attempts to distinguish Grant, Vega, and Knox and instead argues that the District of Columbia Circuit's decision in Kimberlin v. Quinlan should guide our analysis. 199 F.3d 496 (D.C.Cir.1999). In Kimberlin, Defendants moved for dismissal or summary judgment arguing, inter alia, that prison inmates do not have a clearly established First Amendment right to contact the press, and plaintiff failed to meet the heightened pleading standard applied to motive-based civil rights claims. Id. at 499. The district court denied the motion and defendants appealed only the heightened pleading standard ruling. Id. After discovery, defendants again moved for dismissal or summary judgment claiming the law was not clearly established. Id. The district court denied the motion concluding that its prior ruling that the law was clearly established was law of the case, and the appellate court affirmed. Id. at 499, 502.
 
 
 15
 Although Kimberlin, like Grant and Vega, is factually similar to the case presently before this court, Robbins' argument that Kimberlin supports the assertion we lack jurisdiction to consider Defendants' appeal is erroneous. The court in Kimberlin did not dispose of the case by asserting a lack of jurisdiction. Rather, it examined the merits by reviewing the propriety of the district court's application of the law of the case doctrine. Id. at 500-02. The court determined that the district court had correctly applied the law of the case doctrine because the same legal question had been decided in a prior stage of litigation and no prudential reasons existed for revisiting the prior decision. Id. In any event, the court proceeded to actually examine the underlying law of the case concluding that the First Amendment right at issue was "without doubt [] clearly established." Id. at 502.
 
 
 16
 Therefore, after Behrens, no circuit has held that an appellate court lacks jurisdiction over denial of a motion for summary judgment when the motion raises the same legal arguments as a prior un-appealed motion to dismiss but relies on evidence developed during discovery.[1] Similarly, we decline to adopt such a rule. In carving out an exception to the finality requirement for appeals involving qualified immunity, the Supreme Court recognized that qualified immunity is both a right to avoid standing trial and a right to avoid the burdens of pretrial matters such as discovery. Behrens, 516 U.S. at 308, 116 S.Ct. 834. Requiring public officials to choose at which stage of litigation to raise a qualified immunity defense is inconsistent with these purposes. If public officials can avoid discovery by success on a motion to dismiss based on qualified immunity, they should not be prevented from filing the motion because of a fear that denial of the motion will prevent them from raising the defense again once their evidence is strengthened through discovery. Additionally, public officials should not be forced to appeal an order denying dismissal on qualified immunity to preserve appeal of a potential subsequent order denying summary judgment on the same issue. Such a rule would dramatically increase the number of interlocutory appeals at the dismissal stage. Vega, 273 F.3d at 465; Grant, 98 F.3d at 121. Thus, in the present case, Defendants' failure to appeal the district court's denial of dismissal on qualified immunity does not divest this court of jurisdiction to consider Defendants' current appeal because Defendants' summary judgment motion relies in part on evidence developed during discovery.
 
 B. Qualified Immunity
 
 17
 We review a district court's denial of summary judgment based on qualified immunity de novo. Perez v. Ellington, 421 F.3d 1128, 1131 (10th Cir.2005). "Under the doctrine of qualified immunity, government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Douglas v. Dobbs, 419 F.3d 1097, 1100 (10th Cir.2005) (quotation omitted). When a defendant raises a claim of qualified immunity, the burden shifts to the plaintiff to show that the defendant is not entitled to immunity. Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir.2001). To overcome a qualified immunity defense, a plaintiff must first assert a violation of a constitutional or statutory right and then show that the right was clearly established. Garramone v. Romo, 94 F.3d 1446, 1449 (10th Cir.1996). A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). To show that a right is clearly established, a plaintiff does not have to produce a factually identical case. Rather, plaintiff may produce a Supreme Court or Tenth Circuit opinion on point, or demonstrate that the right is supported by the weight of authority from other courts. Axson-Flynn v. Johnson, 356 F.3d 1277, 1299 (10th Cir.2004). Once the plaintiff satisfies this initial two-part burden, the burden shifts to the defendant to show that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. Id.
 
 1. Fifth Amendment
 
 18
 Robbins' Bivens claim alleges Defendants' conduct violated his right to be free from retaliation for exercise of his Fifth Amendment right to exclude others from his property. Robbins argues that the district court relied solely on the law of the case doctrine in denying Defendants' motion for summary judgment on his Bivens claim. The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). A district court's decision denying defendants' motion to dismiss on qualified immunity is not law of the case for purposes of a subsequent motion for summary judgment on qualified immunity. Law of the case does not apply because a motion to dismiss and a motion for summary judgment do not raise the "same issues." Different "legally relevant factors" are under consideration on a motion to dismiss and a motion for summary judgment. Behrens, 516 U.S. at 309, 116 S.Ct. 834. On a motion to dismiss, a court examines the conduct alleged in the complaint to determine if plaintiff has alleged a violation of clearly established law, whereas, on a motion for summary judgment, a court examines the evidence gathered during discovery. Id. Thus, reliance on law of the case in dismissing Defendants' motion for summary judgment in this case would be erroneous.[2]
 
 
 19
 The district court, however, did not rely on law of the case. The district court did discuss law of the case in noting that it had already concluded in its denial of dismissal that Robbins' alleged a violation of his clearly established Fifth Amendment rights. Nevertheless, in light of Behrens, the district court continued by examining the evidence gathered during discovery. The court determined Robbins' had provided ample evidence to support his allegation of a violation of clearly established law and Defendants failed to show the absence of an issue of material fact. Therefore, the district court actually examined the legally relevant factors involved in determining whether summary judgment was appropriate and did not merely rely on law of the case. Because the district court reached the question of whether Robbins met his burden of providing evidence supporting his allegation of a violation of clearly established law, we now review the district court's decision.
 
 
 20
 
 a. Constitutional Right
 
 
 
 21
 We first examine whether there is a Fifth Amendment right to exclude the government from one's private property and then inquire whether the Constitution proscribes retaliation for the exercise of that right. "The right to exclude [is] universally held to be a fundamental element of the property right." Kaiser Aetna v. United States, 444 U.S. 164, 178-80, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979); see also Dolan v. City of Tigard, 512 U.S. 374, 384, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994). The right has long been recognized as one of the main rights attaching to property. Rakas v. Illinois, 439 U.S. 128, 143 n. 12, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (citing Blackstone Commentaries).
 
 
 22
 Defendants nevertheless argue Robbins has no constitutional right to exclude the government under the Fifth Amendment; rather, he is only entitled to just compensation if the government takes his property for public use. Because the government has not effected a taking in this case, Defendants contend Robbins has not alleged a constitutional violation. This argument is unpersuasive.
 
 
 23
 A property owner's right to exclude extends to private individuals as well as the government. See United States v. Lyons, 992 F.2d 1029, 1031 (10th Cir.1993) (the expectations of privacy that are the cornerstone of Fourth Amendment protection against governmental search and seizure derive in part from the right to exclude others, including government officials, from one's property). "The intruder who enters clothed in the robes of authority in broad daylight commits no less an invasion of [property] rights than if he sneaks in in the night wearing a burglar's mask." Hendler v. United States, 952 F.2d 1364, 1375 (Fed.Cir.1991). Defendants' assertion that BLM could have taken Robbins' property for public use after providing just compensation is correct. BLM, however, did not exercise or attempt to exercise its eminent domain power in this case. Instead, Robbins alleges, Defendants attempted to extort a right-of-way to avoid the requirement of just compensation. If the right to exclude means anything, it must include the right to prevent the government from gaining an ownership interest in one's property outside the procedures of the Takings Clause.
 
 
 24
 Defendants also argue that because BLM regulations permit access to and regulation of Robbins' property for certain purposes, Robbins has no right to exclude the BLM. The Supreme Court, however, rejected this argument in Kaiser, 44 U.S. 164, 100 S.Ct. 383. The government claimed a public right of access under the Rivers and Harbors Act to what was once a private pond. Id. at 168, 100 S.Ct. 383. The owner had developed the pond into a private marina by dredging a channel and connecting the pond to a bay. Id. at 165-67, 100 S.Ct. 383. The government claimed that these improvements converted the pond into "navigable water," and thus, by statute, the government was entitled to a public right of access. Id. at 168, 100 S.Ct. 383. The Court disagreed. It noted that while the marina may be subject to regulation by the Corps of Engineers as a navigable water, it did not follow that Congress could require a public right of access without invoking its eminent domain power and paying just compensation. Id. at 172-73, 100 S.Ct. 383. Thus, Robbins has a Fifth Amendment right to prevent BLM from taking his property when BLM is not exercising its eminent domain power.
 
 
 25
 This court has never explicitly recognized a constitutional right to be free from retaliation for the exercise of Fifth Amendment rights. Nevertheless, the right to be free from retaliation in the context of the First Amendment has long been recognized. Although the First Amendment does not expressly forbid retaliation, retaliation by government officials is prohibited under the Amendment because it "tends to chill citizens' exercise of their" rights to speech and association. Perez, 421 F.3d at 1131. This chilling effect applies to the Fifth Amendment right to exclude the government from one's property as well. It is clear that the right to exclude the government is not unlimited. Under the Takings Clause, the government may take private property for public use so long as it provides just compensation. U.S. Const. amend. V. When the government has chosen not to exercise its eminent domain power, however, citizens remain free to exclude even the government from their private property. Kaiser, 444 U.S. at 179-80, 100 S.Ct. 383. If we permit government officials to retaliate against citizens who chose to exercise this right, citizens will be less likely to exclude the government, and government officials will be more inclined to obtain private property by means outside the Takings Clause. The constitutional right to just compensation, in turn, would become meaningless. Because retaliation tends to chill citizens' exercise of their Fifth Amendment right to exclude the government from private property, the Fifth Amendment prohibits such retaliation as a means of ensuring that the right is meaningful.
 
 
 26
 
 b. Clearly Established
 
 
 
 27
 As evidenced by the citations above, the right to exclude others from one's property has long been recognized by the courts of this country. See, e.g., Rakas, 439 U.S. at 143 n. 12, 99 S.Ct. 421. Nevertheless, Defendants argue there is no authority specifically recognizing the right to be free from retaliation for the exercise of Fifth Amendment rights. That is, even if the right to exclude is clearly established, they are still entitled to qualified immunity because the right to be free from retaliation in the private property context is not clearly established. While this assertion is true, it does not follow that the right is not clearly established such that a reasonable official would understand that his actions violate the law. Although alleged rights violations must be analyzed at the proper level of generality, "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." Pierce v. Gilchrist, 359 F.3d 1279, 1298 (10th Cir.2004). No objectively reasonable government official would think he can retaliate against a citizen for that citizen's exercise of a clearly established constitutional right.
 
 
 28
 In DeLoach v. Bevers, this court examined whether the right to be free from retaliation for the exercise of First Amendment rights was clearly established. 922 F.2d 618, 620 (10th Cir.1990). We stated that "[a]n act taken in retaliation for the exercise of a constitutionally protected right is actionable.... The unlawful intent inherent in such a retaliatory action places it beyond the scope of a police officer's qualified immunity if the right retaliated against was clearly established." Id. (citations and quotations omitted); cf. United States v. Murphy, 65 F.3d 758, 762-63 (9th Cir.1995) (government cannot retaliate against defendant by refusing to file a motion for downward departure under the Federal Sentencing Guidelines because of defendant's failure to waive his Sixth Amendment right to a jury trial). Therefore, although no court has previously explicitly recognized the right to be free from retaliation for the exercise of Fifth Amendment rights, DeLoach requires only that the right retaliated against be clearly established. As we noted above, the right to exclude others from one's property is well established. Robbins has thus sufficiently alleged a violation of his clearly established Fifth Amendment rights, and Defendants are not entitled to qualified immunity on Robbins' Bivens claim.
 
 2. RICO
 
 29
 Robbins also alleges Defendants' conduct violated RICO. RICO provides civil remedies for "[a]ny person injured in his business or property by reason of a violation of 18 U.S.C. § 1962." 18 U.S.C. § 1964(c). Section 1962 in turn makes it unlawful for, inter alia, "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Id. § 1962(c). Racketeering activity includes, among other predicate acts, any act indictable under the Hobbs Act and any act or threat involving extortion chargeable under state law. Id. § 1961(1)(A) & (B). Robbins alleges Defendants' actions amount to extortion under color of official right and by wrongful use of fear in violation of the Hobbs Act and blackmail under Wyo. Stat. Ann. § 6-2-402.
 
 
 30
 The district court determined that Robbins sufficiently alleged Defendants engaged in a pattern of racketeering involving extortion in violation of clearly established law under RICO, the Hobbs Act, and Wyo. Stat. Ann. § 6-2-402. Defendants do not contest this conclusion. Instead, Defendants argue that to be actionable under the Hobbs Act and Wyoming law, Defendants' attempts to obtain a right-of-way from Robbins must be independently wrongful. Defendants further contend that their actions were not wrongful because BLM regulations permit the BLM to require an applicant for a right-of-way across federal lands to grant the United States an equivalent right-of-way. 43 C.F.R. § 2801.1-2. Because Defendants had legal authority to require Robbins to grant the BLM a right-of-way in exchange for his right-of-way on federal lands, Defendants contend their conduct in seeking the right-of-way does not constitute a clearly established predicate act under either the Hobbs Act or Wyoming law. Defendants, however, apparently misunderstand Robbins' allegations. Robbins does not allege that Defendants committed extortion by attempting to obtain a right-of-way. Rather, he alleges Defendants' other actions, including refusing to maintain the road providing access to Robbins' property, cancelling Robbins' special recreation use permit and grazing privileges, bringing unfounded criminal charges against Robbins, trespassing on Robbins' private property, and interfering with Robbins' guest cattle drives, were all committed in an attempt to coerce Robbins into granting BLM a right-of-way. Thus, it is Defendants' actions other than seeking the right-of-way that Robbins alleges are extortionate. Although Defendants do not enumerate specific regulatory provisions permitting each of their actions, the regulatory authority may exist.[3] Nevertheless, we conclude that if Defendants engaged in lawful actions with an intent to extort a right-of-way from Robbins rather than with an intent to merely carry out their regulatory duties, their conduct is actionable under RICO.
 
 
 31
 a. Hobbs Act
 
 
 32
 
 (1) Statutory Right
 
 
 
 33
 The Hobbs Act prohibits interference with interstate commerce by extortion, attempted extortion, or conspiracy to commit extortion. 18 U.S.C. § 1951(a). Extortion is defined in the Act as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." Id. § 1951(b)(2).
 
 
 34
 Although they do not phrase it as such, Defendants essentially assert a claim of right or good faith defense to Robbins' allegations that they violated the Hobbs Act. The claim of right defense provides that a person with a lawful claim of right to property cannot be liable for wrongfully acquiring it. United States v. Castor, 937 F.2d 293, 299 (7th Cir.1991). The Supreme Court first recognized the defense in the context of the Hobbs Act in United States v. Enmons, 410 U.S. 396, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973). In Enmons, labor leaders who used violence during collective bargaining were charged with extortion. Id. at 397-98, 93 S.Ct. 1007. The Court reversed the labor leaders' convictions, holding that the Hobbs Act did not prohibit the use of violence to achieve lawful labor union objectives, such as higher wages; rather, the Act only prohibits violence as a means of achieving illegal objectives, such as the exaction of personal payoffs. Id. at 400, 407, 93 S.Ct. 1007.
 
 
 35
 Several courts of appeals, including this court, however, have held that the claim of right defense should be limited to the facts of Enmons, specifically the use of force, violence, or fear in the context of a labor dispute. Castor, 937 F.2d at 299; United States v. Zappola, 677 F.2d 264, 268-69 (2d Cir.1982); United States v. French, 628 F.2d 1069, 1074-75 (8th Cir.1980); United States v. Cerilli, 603 F.2d 415, 419-20 (3d Cir.1979); United States v. Warledo, 557 F.2d 721, 729-30 (10th Cir.1977). As the Second Circuit explained in Zappola, Congress meant to define extortion in the Hobbs Act as it was defined under New York state law. 677 F.2d at 268; see also Scheidler v. Nat'l Org. for Women, Inc., 537 U.S. 393, 402, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003). Moreover, at the time the Hobbs Act was enacted, it was clear under New York law that a claim of right to property that one obtains by violence, force, or threats was not a defense to extortion. Zappola, 677 F.2d at 268. Thus, outside the context of labor disputes, in passing the Hobbs Act, "Congress meant to punish as extortion any effort to obtain property by inherently wrongful means, such as force or threats of force or criminal prosecution, regardless of the defendant's claim of right to the property." Id. at 269.
 
 
 36
 The claim of right defense has been rejected both in the context of extortion by actual or threatened physical violence and extortion under color of official right. For example, in Warledo, this court considered a case in which defendants, who were charged under the Hobbs Act for violence committed against various railroads, argued that they were not guilty of extortion because their violence was aimed at obtaining money the railroad allegedly owed them pursuant to a lawful claim. 557 F.2d at 728-29. We rejected defendants' argument, reasoning that pursuit of an allegedly valid claim by threatened and actual physical violence was not a defense to Hobbs Act extortion. Id. at 730.
 
 
 37
 The claim of right defense was similarly rejected in a case involving extortion under color of official right in Cerilli. 603 F.2d at 418-21. Defendants in Cerilli were employees of the Pennsylvania Department of Transportation and were responsible for leasing equipment from private businesses to repair and maintain public roads. Id. at 418. Defendants sought payment from the individual business owners as a condition of their equipment being used and were charged with extortion under the Hobbs Act. Id. Defendants claimed, and the court accepted, that the payments they received were political contributions. Id. Defendants argued that because solicitation of political contributions is lawful, they were not guilty of extortion under color of official right for seeking the payments. Id. The Third Circuit rejected defendants' argument concluding that while "[t]he receipt of money [] by a political party ... is generally not inherently wrongful ...., [t]he wrong under the Hobbs Act is the manner in which it is obtained." Id. at 419-20. These cases rejecting the claim of right defense establish that a lawful right to property or lawful authority to obtain property is not a defense to extortion; rather, if an official obtains property that he has lawful authority to obtain, but does so in a wrongful manner, his conduct constitutes extortion under the Hobbs Act.
 
 
 38
 Defendants nevertheless argue that their conduct was not extortionate, but merely the zealous exercise of regulatory authority. Defendants cite Sinclair v. Hawke, in which the owner of a bank sued employees of the Office of the Comptroller of the Currency under RICO alleging they engaged in a pattern of racketeering activity. 314 F.3d 934, 939 (8th Cir. 2003). The court dismissed the RICO claim concluding that federal employees do not become racketeers by taking regulatory action consistent with their statutory powers. Id. at 943-44. In this case, however, there is a factual dispute, not present in Sinclair, regarding whether Defendants were merely enforcing the law or using their otherwise lawful authority to extort a right-of-way from Robbins. The district court specifically determined there was question of material fact regarding Defendants' intent.[4] If the trier of fact finds Defendants in fact intended to extort a right-of-way from Robbins, then Defendants' conduct was not merely the zealous exercise of regulatory authority; it was extortion and is actionable under the Hobbs Act.
 
 
 39
 
 (2) Clearly Established
 
 
 
 40
 The five circuits that have addressed the claim of right defense outside the labor context have rejected the defense. Although no court has rejected the claim of right defense under circumstances identical to the ones presented by this case, it is not necessary for the precise conduct of Defendants to have been previously held unlawful to defeat a claim of qualified immunity. Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). It is sufficient if preexisting law put Defendants on fair notice that their conduct violated the law. Id.; United States v. Lanier, 520 U.S. 259, 270-71, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). Moreover, although we must analyze alleged rights violations at the proper level of generality, "the degree of specificity required from prior case law depends in part on the character of the challenged conduct." Pierce, 359 F.3d at 1298. "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." Id. Each of the five circuits that have addressed the issue have held that a lawful right to property or lawful authority to obtain property does not permit a defendant to use any means necessary to obtain the property. Thus, the weight of authority clearly prohibits Defendants' alleged conduct. See Anaya v. Crossroads Managed Care Sys., Inc., 195 F.3d 584, 594 (10th Cir.1999) (law was clearly established when six circuits, not including the Tenth Circuit, that had addressed the issue all came to the same conclusion). Further, in light of the egregious nature of Defendants' alleged conduct,[5] authority rejecting the claim of right defense generally and in cases involving extortion under color of official right specifically were sufficient to put Defendants on notice that their conduct violated the law. Viewing the facts in the light most favorable to Robbins, as we must, we conclude that Robbins has sufficiently alleged a violation of his clearly established statutory rights under the Hobbs Act.
 
 
 41
 b. Wyoming law
 
 
 42
 
 (1) Statutory Right
 
 
 
 43
 Robbins also alleges Defendants' violations of Wyo. Stat. Ann. § 6-2-402 qualify as predicate acts of racketeering activity under RICO. 18 U.S.C. § 1961(1)(A). Wyo. Stat. Ann. § 6-2-402 provides:
 
 
 44
 (a) A person commits blackmail if, with the intent to obtain property of another or to compel action or inaction by any person against his will, the person:
 
 
 45
 ....
 
 
 46
 (ii) Accuses or threatens to accuse a person of a crime or immoral conduct which would tend to degrade or disgrace the person or subject him to the ridicule or contempt of society.[6]
 
 
 47
 Robbins alleges Defendants violated this provision by accusing and threatening to accuse him of various crimes to coerce him into granting BLM a right-of-way. Defendants once again argue that their conduct must be wrongful to constitute a violation of Wyoming law actionable under RICO. Specifically, Defendants note that the Supreme Court has held that because RICO defines racketeering activity as an "act or threat involving... extortion, ... which is chargeable under State law," the conduct proscribed under the state law relied on must be capable of being generically classified as extortionate. Scheidler, 537 U.S. at 409, 123 S.Ct. 1057. Moreover, "generic extortion is defined as obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats." Id. (quotations omitted). Therefore, Defendants urge "for the same reasons that Robbins' claims are not extortion under the Hobbs Act," they are not extortionate under Wyoming law.
 
 
 48
 Defendants argument is, once again, unavailing. We agree that conduct proscribed under state law must be generically classified as extortionate to qualify as a predicate act under RICO. Nevertheless, for the same reasons Defendants' alleged lawful authority to require a reciprocal right-of-way from Robbins did not give them authority to use any means necessary to extort the right-of-way under the Hobbs Act, that authority does not provide a defense under Wyoming law.
 
 
 49
 
 (2) Clearly Established
 
 
 
 50
 The parties have not cited, and this court cannot find, any authority from Wyoming state courts addressing the applicability of the claim of right defense under Wyo. Stat. Ann. § 6-2-402. It is clear from the language of the statute, however, that Defendants' claim of lawful authority to require Robbins to grant BLM a right-of-way does not allow Defendants to accuse Robbins of a crime with the intent to obtain the right-of-way.
 
 
 51
 In Lanier, the Supreme Court noted that "the qualified immunity test is simply the adaptation of the fair warning standard [of criminal law]" to government officials facing civil liability. 520 U.S. at 270-71, 117 S.Ct. 1219. The fair warning standard requires the statute under which a defendant is charged, "either standing alone or as construed by the courts," make it reasonably clear that the defendant's conduct was criminal. Id. at 267, 117 S.Ct. 1219 (emphasis added). Thus, it follows that if the text of a statute clearly establishes the contours of a right, the statute alone is sufficient to put an objectively reasonable official on notice that conduct within the plain text of the statute violates that right for purposes of qualified immunity. See Greene v. Barrett, 174 F.3d 1136, 1142-43 (10th Cir.1999) (property right was not clearly established, in part, because state statute was ambiguous).
 
 
 52
 The language of the Wyoming statute is unambiguous. The statute clearly establishes that it is unlawful to accuse or threaten to accuse a person of a crime with the intent to obtain that person's property or compel some other action or inaction. BLM regulations requiring a reciprocal right-of-way may be relevant to demonstrate that Defendants did not accuse Robbins of crimes with the intent to obtain a right-of-way because Defendants already had legal authority to require a right-of-way, and thus, did not need to extort one. BLM regulations, however, cannot serve as a defense if the trier of fact finds that Defendants accused Robbins of crimes with the intent to obtain a right-of-way or to compel Robbins to grant a right-of-way, because the text of the statute clearly establishes that this conduct violates the statute. Because Robbins adduced sufficient evidence Defendants accused and threatened to accuse him of various crimes to obtain a right-of-way in clear violation of the text of the statute, Robbins has sufficiently alleged a violation of clearly established statutory rights under Wyoming law.
 
 C. Administrative Procedures Act
 
 53
 Defendants also argue that Robbins' Bivens claim is precluded by the Administrative Procedures Act ("APA"). Specifically, this court previously held that the APA provides an alternative, equally effective remedy for individual action leading to a final agency decision. Robbins I, 300 F.3d at 1212-13. Therefore, we reasoned, only Robbins' allegations involving individual action unrelated to final agency action are permitted under Bivens. Id. Defendants claim the district court never examined Robbins' complaint to determine which allegations remain and which are precluded, and ask us to do so now.
 
 
 54
 The district court did not address whether any conduct alleged in Robbins' complaint is precluded by the APA because Defendants did not raise this issue in their motion for summary judgment. Because we generally do not consider issues not raised below, we decline to address Defendants' argument. Walker v. Mather (In re Walker), 959 F.2d 894, 896 (10th Cir.1992).
 
 IV. Conclusion
 
 55
 For the foregoing reasons, this court AFFIRMS the district court's denial of Defendants' motion for summary judgment on qualified immunity.
 
 
 
 Notes:
 
 
 [1]
 Prior toBehrens, two circuits dismissed appeals involving a second denial of qualified immunity because the second motion was substantially the same as the first. Armstrong v. Tex. State Bd. of Barber Exam'rs, 30 F.3d 643, 644 (5th Cir.1994); Taylor v. Carter, 960 F.2d 763, 764 (8th Cir.1992). But see Grant v. City of Pittsburgh, 98 F.3d 116, 120 (3d Cir.1996) (distinguishing Armstrong and Taylor in a case where defendant's second motion relied on material developed during discovery).
 
 
 [2]
 InKimberlin v. Quinlan, the Court of Appeals for the District of Columbia upheld a district court's reliance on law of the case in dismissing defendant's motion to dismiss or for summary judgment on qualified immunity when the district court had previously determined on a prior motion to dismiss or for summary judgment that plaintiff had alleged a violation of clearly established law. 199 F.3d 496, 500-01 (D.C.Cir.1999). Kimberlin is distinguishable from the present case, however, because, in Kimberlin, "the relevant facts [had not] changed" between the denial of dismissal and summary judgment. Id. at 501. Thus, the same facts and same issues were under consideration in both motions, making law of the case applicable. Here, the relevant facts are different. As the district court noted, Robbins' motion in opposition to summary judgment included 248 exhibits supporting his claim that were not available at the motion to dismiss stage.
 
 
 [3]
 Defendants do provide regulatory authority for some of their alleged conduct. Specifically, Defendants reference a BLM regulation which permits BLM to include in grazing permits "a statement disclosing the requirement that permittees or lessees shall provide reasonable administrative access across private and leased lands to the [BLM] for the orderly management and protection of the public lands." 43 C.F.R. § 4130.3-2(h). Additionally, Defendants cite 43 C.F.R. § 2801.3(a) which states that the use of public lands requiring a right-of-way without authorization is a trespass
 
 
 [4]
 We do not have jurisdiction to examine the district court's determination regarding evidentiary sufficiency on interlocutory appealFoote v. Spiegel, 118 F.3d 1416, 1422 (10th Cir.1997).
 
 
 [5]
 The district court noted that Robbins submitted "evidence of Defendants' alleged motive and intent, threats, lies, trespass, disparate treatment and harassment in the form of various depositions, including [the] deposition of a former BLM [employee], various letters, criminal trial transcript and trespass notices."
 
 
 [6]
 Although the statute defines the crime as blackmail, it also notes that "[c]onduct denoted blackmail in this section constitutes a single offense embracing the separate crimes formerly known as blackmail and extortion." Wyo. Stat. Ann. § 6-2-402(e);cf. United States v. Nardello, 393 U.S. 286, 296, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969) (Travel Act's prohibition against extortion under state law applies to extortionate conduct classified by a state penal code as blackmail rather than extortion).